**Charles Anthony REDD, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 49097.**

Court of Criminal Appeals of Texas.

March 12, 1975.

Rehearing Denied May 21, 1975.

C. David Evans, Arthur A. Estefan and Allan Craig, San Antonio, for appellant.

Ted Butler, Dist. Atty., Gordon V. Armstrong and David K. .Chapman, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

ROBERTS, Judge.

The conviction is for robbery by assault; the punishment, life imprisonment.

The indictment alleges that on November 18, 1972 appellant robbed one Keith McCrary, manager of the Gibson's Discount Center, by holding members of his family hostage. Appellant was positively identified by the complaining witness and three additional witnesses. Mrs. McCrary was called as a witness for the State and testified in detail about the period she was held hostage. During cross-examination, she was questioned by the defense about her misidentification of the appellant at an earlier lineup. She was uncertain as to her identification of appellant at trial.

Over strenuous objection, the State was allowed to introduce evidence of two extraneous offenses during their case in chief. The first one involved an April 29, 1972 robbery at a Handy Andy supermarket wherein the family of the manager was held hostage in order to effectuate the crime. The second extraneous offense was a robbery at an H.E.B. food store on June 6, 1972. It likewise involved the same scheme and design of holding the manager's family hostage.

The appellant offered no evidence; rested and closed with the State.

In his first ground of error, appellant urges that this case should be reversed because the State was permitted to introduce evidence of two extraneous offenses. Appellant argues that since the defense rested with the State, put on no evidence, and raised no defensive theories, the admission of these extraneous offenses during the State's *direct* case was error. We agree.

The State contends that the issue of identity was raised by appellant's cross-examination of Mrs. McCrary. On cross-examination, she was asked:

"Q Of course, I guess what everybody is interested in hearing right now is

whether or not this is the man that was at your house?

"A Well, I can't be just positively sure.

"Q Okay. You certainly weren't positively sure on the 13th of December when you picked another man out of a line-up, were you?

"A No, I wasn't.

"Q Did you pick another man out?

"A Yes, I did."

Subsequently, in her cross-examination, she testified that she did not want to take a chance and say definitely that appellant was the man in her house because he may not have been the one. From these circumstances, the State maintains that Mrs. McCrary was vigorously cross-examined and the identity of appellant was raised, thereby opening the door for the admission of collateral crimes.

The issue presented is whether the cross-examination of Mrs. McCrary raised the issue of identity such as to permit the admission of two extraneous offenses. We can only conclude that it did not. The decision of this Court in Hickombottom v. State, 486 S.W.2d 951 (Tex.Cr.App.1972) is dispositive. It involved a similar situation wherein co-defendants closed with the State and did not put on any evidence nor offer any defensive theories. Two policemen identified the defendants as they were leaving the scene of the crime with guns in their hands. The co-defendants were further identified by the store manager and three other employees of the store. The State urged that the identity of co-defendant Carter was raised by vigorous cross-examination of the store manager where he testified his identification was based on a very brief glance; however, the witness remained positive in his identification. As to co-defendant Hickombottom, the State contended identity was raised while during

cross-examination one witness testified that the defendant "resembled" one of the persons committing the robbery. On direct, the witness had testified that Hickombottom was one of the robbers. This Court held that since at least two other witnesses made positive identifications of both defendants and they offered no evidence in their behalf, the issue of identity was not raised.

Clearly, the aforementioned case controls the one at bar. Here, there are at least four other positive identifications which remained unimpeached after cross-examination. See Okra v. State, 507 S.W.2d 220 (Tex.Cr.App.1974); Franklin v. State, 488 S.W.2d 826 (Tex.Cr.App.1972); Albrecht v. State, 486 S.W.2d 97 (Tex.Cr.App.1972); Rogers v. State, 484 S.W.2d 708 (Tex.Cr.App.1972); compare Caldwell v. State, 477 S.W.2d 877 (Tex.Cr.App.1972). Three witnesses identified appellant as the man at the Gibson's store and one, Mrs. McCrary's daughter, positively identified appellant as the man in her home. Mrs. McCrary on direct examination testified she believed appellant was one of the robbers.[1] As in Hickombottom v. State, supra, the effectiveness of the State's direct evidence was not seriously affected by Mrs. McCrary's uncertain identification. Albrecht v. State, supra. The effect of the questions propounded on cross-examination was inconsequential in relation to the strength of the State's case.

A statement in Caldwell v. State, supra, is applicable to the instant case:

"To hold that the cross-examination of this prosecutrix would permit the introduction of an extraneous offense would be tantamount to holding that such testimony would be admissible in any case where a defendant's counsel exercises the constitutional right of cross-examination. This is not and should not be the law." See also Rogers v. State, supra.

---

1. The testimony was as follows:
   "Q Is this the black man?
   "A This was the black man."

It is unclear from the record whether this identification was directed at appellant; however, we will assume it was.

The State relies on Mitchell v. State, 503 S.W.2d 562 (Tex.Cr.App.1974); Cobb v. State, 503 S.W.2d 249 (Tex.Cr.App.1973); Gillon v. State, 492 S.W.2d 948 (Tex.Cr. App.1973). These cases are clearly distinguishable from the case at bar. In Mitchell v. State, supra, extraneous offenses were admitted after both defendants testified on their own behalf, denied committing the crime, and relied on the defense of alibi. Although there was an extensive, searching and forceful cross-examination of each witness who identified the defendants, the issue of identity in that case was raised not only by a vigorous cross-examination but also because of the defendants' denial of the commission of the crime[2] and their reliance on the defense of alibi.[3] There can be no doubt in Mitchell v. State, supra, but that the issue of identity was raised. It is particularly noteworthy that in the instant case the defense rested with the State. In Cobb v. State, supra, the defendant testified that he did not commit the crime and raised the defense of alibi. The State relied on the defense of alibi to introduce the collateral offenses.

The situation in Gillon v. State, supra, involved the successful impeachment of the complaining witness on cross-examination because of his misidentification of appellant before the grand jury. *In such a case where the State's only identifying witness is impeached as to a material detail of his identification, extraneous offenses are properly admissible to circumstantially prove identity.* See Hickombottom v. State, supra; Simmons v. State, 457 S.W.2d 570 (Tex.Cr.App.1970); Fer-

rell v. State, 429 S.W.2d 901 (Tex.Cr.App. 1968); Olivio v. State, 422 S.W.2d 182 (Tex.Cr.App.1967); compare Lusk v. State, 511 S.W.2d 279 (Tex.Cr.App.1974). The common distinguishing feature to each of the above mentioned cases is that the effectiveness of the State's direct evidence, i. e., sole identifying witness, is undermined by defense cross-examination; whereas, the case at bar has *four* unimpeached identifying witnesses and the State's case is not seriously impaired. Albrecht v. State, supra, citing the aforementioned cases.

Another decision of this Court which relied on vigorous cross-examination as a basis for admitting extraneous offenses in order to prove identity was Parks v. State, 437 S.W.2d 554 (Tex.Cr.App.1969). In that case, there were two witnesses who made positive identifications on direct examination. The defendant did not testify but did call a policeman as a defense witness who was unable to match the defendant's fingerprints with those taken at the scene of the crime. During cross-examination, the first identifying witness was impeached by his statement to the police immediately after the crime in which he stated he was unable to identify the murderer because he did not see the man clearly. Defendant's counsel vigorously cross-examined the second identifying witness and attempted to impeach him with his prior statement to the police. It is apparent that identity was a sharply controverted issue and the effectiveness of the State's direct evidence on identification was seriously jeopardized. The defendant presented a defense and the State sought to rebut this defensive theory[4] by use of ex-

2. See Lee v. State, 496 S.W.2d 616 (Tex.Cr. App.1973); Ford v. State, 484 S.W.2d 727 (Tex.Cr.App.1972); Grayson v. State, 481 S.W.2d 859 (Tex.Cr.App.1972).

3. See Green v. State, 510 S.W.2d 919 (Tex. Cr.App.1974); Ransom v. State, 503 S.W.2d 810 (Tex.Cr.App.1974); Jones v. State, 501 S.W.2d 308 (Tex.Cr.App.1973); Henrikson v. State, 500 S.W.2d 491 (Tex.Cr.App.1973); Roberts v. State, 495 S.W.2d 894 (Tex.Cr. App.1973); Curlin v. State, 492 S.W.2d 480

(Tex.Cr.App.1973); Fagan v. State, 489 S. W.2d 578 (Tex.Cr.App.1973); Martin v. State, 489 S.W.2d 282 (Tex.Cr.App.1973); Frison v. State, 473 S.W.2d 479 (Tex.Cr.App. 1971); compare Johnson v. State, 509 S.W. 2d 870 (Tex.Cr.App.1974).

4. See Thrush v. State, 515 S.W.2d 122 (Tex. Cr.App.1974); Lolmaugh v. State, 514 S.W. 2d 758 (Tex.Cr.App.1974); Grayson v. State, supra, note 3.

traneous offenses to establish the hotly contested issue of identity.

■ We find none of the foregoing cases applicable to the instant case. The State's case was not substantially affected when one witness could not positively identify the appellant in the face of overwhelming direct evidence to that issue. Cross-examination of Mrs. McCrary was not such as to raise the issue of identity. We conclude that it was error to admit the extraneous offenses under such circumstances. See Jones v. State, 481 S.W.2d 900 (Tex.Cr. App.1972); Hafti v. State, 416 S.W.2d 824 (Tex.Cr.App.1967).

For the reasons stated, the judgment is reversed and the cause remanded.

## OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

On original submission this cause was reversed because the trial court erroneously admitted evidence of two extraneous offenses. We held the cross-examination of Mrs. McCrary, one of the State's witnesses, did not raise the issue of identity.

In its brief supporting its Motion for Rehearing, the State contends the cross-examination of all the witnesses called on the State's case-in-chief, taken together, was sufficient to raise the issue of identity and permit the introduction of extraneous offenses. In support of this theory the State enumerates the following "unexplained discrepancies elicited as a result of cross-examination:

"A.) Two witnesses stated the robber wore glasses. (Mrs. McCrary and Sandra McCrary).

"B.) Three witnesses said the robber was not wearing glasses ([Mr.] McCrary, Officer Fulton, and Martha Boothe).

"C.) All the witnesses, except Martha Boothe, stated the robber had a mustache. Martha Boothe stated that the robber had no mustache and was clean-shaven.

"D.) Some of the witnesses stated the robber had long sideburns. No long sideburns were characteristic of Appellant as reflected by his mug shot and his presence in the line-up.

"E.) Mrs. McCrary identified another individual in the line-up as the robber and could not identify Appellant at trial as being the robber.

"F.) Tefteller's testimony on cross-examination elicited the fact that of all the witnesses to the robbery at the line-up, three or four could not identify Appellant as the individual who committed the robbery.

"G.) Out of the three or four witnesses who could not identify Appellant at the line-up, only Mrs. McCrary was present at the trial."

Although on first impression it appears that numerous discrepancies were developed on cross-examination, a closer examination of the record dispels that conclusion. The apparent conflict among the witnesses on whether the robber wore glasses presents the greatest initial suggestion that identity is in issue. An examination of the record, however, reveals a reasonable explanation which by no means puts identity in issue. The offense was committed as follows: Appellant and a companion entered the home of Keith McCrary, manager of a Gibson store, and held his family hostage. Appellant then took the family car and went to the store, where he met McCrary and robbed the store, aided by the fact that his companion was holding McCrary's family hostage. The witnesses who said the robber was wearing glasses were those who observed him at the home. Those who said he was not wearing glasses were the ones who observed him at the store. Thus, while the "discrepancy" may have shown that the robber was a

clever criminal who attempted to change his appearance in the midst of the crime, it did not undermine or jeopardize the State's case or place identity in issue.

The other asserted discrepancies had an equally insignificant impact on the State's proof of identity and did not authorize the introduction of extraneous offenses.

The State's Motion for Rehearing is overruled.

DOUGLAS, Judge (dissenting).

On original submission this cause was reversed because the trial court admitted evidence of an extraneous offense. The opinion concluded that there was no defensive theory raised. The State's motion for rehearing has been overruled.

The record reflects that a white man wearing a mask and a black man entered the home of Keith McCrary, a manager of a Gibson's Store in San Antonio. All of the members of the family who were present were rounded up and held hostage by the masked man. The black man [appellant] took the family car and went to the Gibson's Store managed by McCrary. Appellant told McCrary that he needed to talk to him. They went to the office where appellant took McCrary's gun. B. G. Fulton, working as a security officer, was called to the office. A woman employee came to the office. In a telephone conversation with the man at the McCrary home, Fulton learned that the family was being held hostage.

Appellant, who had threatened McCrary's family, took him and had him empty the cash registers in the store. After taking approximately $5,000, appellant left.

Sue McCrary, wife of Keith McCrary, testified that a masked white man and a black man came to their house. She related what occurred while they were at the house. She gave no testimony about the identification of either.

Sandra McCrary, a seventh grade student, testified that she saw appellant in her brother's room. Appellant pulled a gun and ordered her into the hall and had her write their telephone number on a piece of paper. He took the keys of her mother's car and left.

B. G. Fulton testified that he was a San Antonio policeman on vacation at the time working as a security officer at Gibson's. He related that it was the appellant who held a gun on the group in the office of the store. He related the threats that appellant had made and testified about the conversation on the telephone at the McCrary home.

Martha Boothe, a cashier, testified that appellant accompanied by McCrary took money from twelve of the cash registers in the store.

Detective Tefteller related how the lineup was conducted.

To see if the question of identity was raised, we will look to the cross-examination of the witnesses.

A portion of the State's brief on motion for rehearing written by Alan E. Battaglia, Assistant District Attorney, is adopted as a part of this dissent. It is as follows:

"The first witness for the State to be cross-examined was Keith McCrary. Counsel for Appellant almost immediately began to challenge the identification of Appellant by Keith McCrary suggesting it may have been tainted. The trial court initially overruled defense counsel's request for a hearing outside the presence of the jury to determine if the identification had been tainted. Later, following an objection to hearsay evidence, the jury was removed and a hearing conducted outside their presence. During this hearing, the trial court permitted Appellant's counsel to question Keith McCrary concerning his identification of Appellant. The Court found that Keith McCrary's identification of Appellant was not tainted.

"On cross-examination, both outside the presence of the jury and again in the jury's presence, Keith McCrary testified that the individual who robbed him had a moustache and was not wearing glasses.

"Officer Fulton testified on cross-examination that the alleged robber had a moustache but did not wear glasses.

"Both Sue and Sandra McCrary stated on cross-examination that the alleged robber had a moustache but that the robber was wearing some type of glasses.

"Further cross-examination of Sue McCrary elicited the fact that she had identified a man other than Appellant at the police line-up. While on cross-examination she could not positively identify Appellant as one of the alleged robbers.

"The witness, Martha Boothe, stated on cross-examination that the alleged robber was not wearing glasses and further that he had no moustache but was in fact, clean-shaven. This contradicted the testimony of every other witness who stated the alleged robber had a moustache.

"Cross-examination of Officer Fulton, Martha Boothe and Sandra McCrary brought out that the alleged robber had long sideburns. Officer Fulton admitted on cross-examination that when he viewed Appellant's mug shot and viewed Appellant in the line-up, he saw no long sideburns on Appellant.

"The cross-examination of Detective Tefteller was also centered around identity. In response to cross-examination, it was elicited from Tefteller that of the witnesses to the robbery who viewed the line-up, three identified Appellant, two identified no one and two identified a man named William Taylor.

"The manner in which cross-examination of the State's witnesses was conducted was penetrating and extensive. Most importantly, cross-examination centered around identity wherein every detail concerning the description of the alleged robber given by the witnesses was exhaustingly probed. Cross-examination included the use of the written statements given prior to trial by the witnesses in challenging identity.

"At the end of the State's direct case the trial court and the jury had before them the following unexplained discrepancies elicited as a result of cross-examination:

"A.) Two witnesses stated the robber wore glasses. (Mrs. McCrary and Sandra McCrary).

"B.) Three witnesses said the robber was not wearing glasses (Mrs. McCrary, Officer Fulton and Martha Boothe).

"C.) All the witnesses, except Martha Boothe, stated the robber had a moustache. Martha Boothe stated that the robber had no moustache and was clean-shaven.

"D.) Some of the witnesses stated the robber had long sideburns. No long sideburns were characteristic of Appellant as reflected by his mug shot and his presence in the line-up.

"E.) Mrs. McCrary identified another individual in the line-up as the robber and could not identify Appellant at trial as being the robber.

"F.) Tefteller's testimony on cross-examination elicited the fact that of all the witnesses to the robbery at the line-up, three or four could not identify Appellant as the individual who committed the robbery.

"G.) Out of the three or four witnesses who could not identify Appellant at the line-up, only Mrs. McCrary was present at the trial.[1] "

1. "That the entire objective of the cross-examination of the State's witnesses was to raise the issue of identity finds further support in the closing remarks made by the attorneys for Appellant. Mr. Estefan stated to the jury:
" 'The only issue in the case, then, is whether or not Charles Redd is the man that

When a witness testifies to an alibi for an accused, this is testimony to the effect that the witnesses were mistaken in their identification of the defendant. This Court recognized that in Ransom v. State, 503 S.W.2d 810 (Tex.Cr.App.1974). See Owens v. State, 450 S.W.2d 324 (Tex.Cr.App. 1970), and Albrecht v. State, 486 S.W. 2d 97 (Tex.Cr.App.1972), which sets out guidelines for the introduction of extraneous offenses. No. (6) permits their introduction "to refute a defensive theory raised by the accused."

The whole defense or issue of appellant in the present case was identification on the part of practically all of the witnesses. This raised the issue more directly than the defense of alibi.

The trial court stated that the question of identity had been raised even though alibi was not mentioned.

The court then allowed proof that at approximately 9:30 p. m., April 29, 1972, appellant and a masked white man went to the home of Talmadge Simmons, the manager of a Handy Andy Store in the Oak Park Center. They knocked on the door and stated that they had had car trouble and wanted to use the telephone. Appellant and the other man both had pistols. Appellant held the family at bay while the masked man searched the house.

The two men took money and some jewelry from the people at the house.

Appellant, still armed, took Simmons and his car to the Handy Andy Store and made him take some $12,000 from the store. In the meantime the white man with the mask held the family at gun point. After getting the money appellant took Simmons home and locked him up with the rest of the family in the master bedroom. Both of the robbers then left. Many of the circumstances in both robberies were the same.

The witnesses to this transaction were cross-examined about their testimony identifying appellant. Appellant moved to strike the testimony of the witnesses to the second transaction because:

"It denies the Defendant the right to be confronted by his accusers in that the Defendant is limited in his cross-examination of the complaining witness as to identity."

Identity being in issue, the trial court did not err in permitting proof of the facts of the robbery of Simmons at the Handy Andy Store.

The State's motion for rehearing should be granted and the judgment affirmed.

ONION, P. J., joins in this dissent.

committed the crime . . . . Has the State proven to you beyond a reasonable doubt, as is outlined in the charge, that Charles Redd and no other man is the person that committed this crime?'
"Mr. Estefan then directed the jury's attention to the discrepancy as to whether or not the alleged robber wore glasses. Next, he discussed the question of the sideburns. Then Mr. Estefan re-emphasized the misidentification of Mrs. McCrary. Next he referred the jury to the fact that Mrs. Boothe stated the robber did not have a moustache and the fact that another witness to the line-up, Kaplan, also identified another individual in the line-up as the robber. After pointing to all the discrepancies raised through cross-examination Mr. Estefan stated:
" ' . . . And, that is what this case is all about, ladies and gentlemen.

" 'This unfortunate man here happens to look more like the robber than any other picture or any other person in a line-up that was shown to the witnesses in this case and that is what we are doing here today.'
"Appellant's counsel, Mr. Evans told the jury that, with the discrepancies, all that existed was an 'honest misidentification'. He concluded by stating:
" 'I think there is all kinds of doubt in this case as to whether or not he is the man that committed the robbery.' "
Defense counsel also argued that Officer Fulton had pressure on him to make a case, but that he was honestly mistaken. It was also argued appellant was incapable of growing sideburns.