Valentino **GONZALEZ, Jr.,** Appellant,

v.

**STATE of Texas,** Appellee.

No. 13–84–210–CR.

Court of Appeals of Texas, Corpus Christi.

Feb. 21, 1985.

Walter E. Chastain, Corpus Christi, for appellant.

Grant Jones, Elaine Stone, Corpus Christi, for appellee.

## OPINION

UTTER, Justice.

This is an appeal from a jury conviction for the offense of theft for which the jury assessed punishment at ten years' confinement in the Texas Department of Corrections. We affirm the judgment of the trial court.

Sandra Lee Dunning, the complainant, testified that, at approximately 9:15 p.m. on November 1, 1983, she was walking alongside Ayers Street in Corpus Christi towards a laundromat. As she was walking, she noticed an individual, who was wearing blue jeans and no shirt and whom she identified to be appellant, jogging up from behind her. As appellant came up behind her, she moved over to let him pass; however, as his steps then slowed down, she turned around, at which time appellant stopped and then attempted to grab with both hands and to pull her purse off of her shoulder until the purse strap finally broke. Appellant then turned and fled with the purse. As appellant fled, Ms. Dunning chased him and saw him jump into a light-colored small car, which she had earlier seen while walking to the laundromat. Ms. Dunning later called the police and subsequently received a message that her purse had been found by Mr. Nichols in a laundromat on Morgan Street in Corpus Christi. After she had picked up her purse from Mr. Nichols, she noticed that her Missouri driver's license as well as two uncompleted checks were missing.

James L. Nichols, Jr., the owner of a self-service car wash in Corpus Christi, testified that, after 10:00 p.m. on November 1, 1983, he saw a light-colored car pull into one of the self-service car wash stalls. After the car pulled away out of the stall, Mr. Nichols went over to the stall and found a ladies' purse lying on the concrete floor with all of its contents strewn about the floor of the stall. Among the contents were a driver's license and a payroll stub, by which he was able to contact Ms. Dunning and tell her that he had found her purse.

Oliver Cantu, an employee at the Whataburger restaurant at the intersection of Ayers Street and South Padre Island Drive in Corpus Christi, testified that, on November 1, 1983, an individual, whom he identified to be appellant, came into the restaurant late that night and placed an order and paid for his food with a check, which the manager approved. The manager had written on the check the number of a Missouri driver's license, which appellant had given him and which had a woman's picture on it. Mr. Cantu further stated that appellant returned to the Whataburger restaurant later that same night.

Esmerelda Ramirez, another employee at the Whataburger restaurant, testified that, on November 1, 1983, she took the order from a man who attempted to pay for his order with a second check, accompanied by a Missouri driver's license issued to Sandra Lee Dunning. Because of restaurant policy, Ms. Ramirez took the check and the driver's license to the assistant manager.

Mary Lou Arrendondo, the manager or assistant manager of the Whataburger restaurant on the night of November 1, 1983, was unable to identify the first of the two checks presented at the Whataburger restaurant that night. She stated that she had approved the first check that night because Mr. Cantu had brought it to her while she was on the telephone and that she had merely initialed it. Ms. Arrendondo further testified that, at about 11:00 p.m. that same night, the second check was brought to her, and that she then told appellant that she could not accept the check.

Charles Joe Parker, a civilian identification analyst employed by the Corpus Christi Police Department, testified that he compared a latent fingerprint taken from the second check with an inked fingerprint of appellant and that, in his opinion, the two fingerprints were the same.

In his sole ground of error, appellant asserts that the trial court erred in admitting evidence of appellant's commission of two extraneous offenses (the passing of the two forged instruments) for the purpose of proving appellant's identity. Appellant, in essence, argues that, because the complainant had positively identified appellant as the person who had stolen her purse, the trial court erred by admitting, over appellant's continued objections, evidence of the passing of the two forged instruments as further proof of appellant's identity.

Appellant's argument is based on *Redd v. State*, 522 S.W.2d 890 (Tex.Crim.App. 1975), and other cases which hold that, in direct evidence cases, extraneous offense evidence may not be used to show identity unless identity has been put in issue through material impeachment of the State's witnesses or through evidence offered by the defendant. *See Prior v. State*, 647 S.W.2d 956 (Tex.Crim.App.1983); *Walker v. State*, 588 S.W.2d 920 (Tex.Crim. App.1979). For reasons stated below, we hold that the extraneous offense evidence, of which appellant complains, was properly admitted despite the fact that this is a direct evidence case and that the issue of identity was not put in issue through material impeachment of the State's witnesses or through evidence offered by appellant.

■ The "true" test of extraneous offense evidence admissibility is set forth in *Williams v. State*, 662 S.W.2d 344 (Tex. Crim.App.1983). In *Williams*, the Court of Criminal Appeals held that evidence of extraneous offenses committed by an accused may become admissible upon a showing by the prosecution both that the transaction is relevant to a material issue in the case and that the relevancy value of the evidence

outweighs its inflammatory or prejudicial potential.

■ In the present case, appellant's use of the complainant's checks shortly after the assault is highly probative of his guilt. In addition, appellant's possession of the recently stolen checks and driver's license adds credence to the complainant's identification of appellant. This evidence, of course, is also prejudicial because it shows appellant's commission of the extraneous offenses and, perhaps, appellant's propensity to commit crimes. The evidence is thus both probative and prejudicial.

The issue on appeal is whether the trial court erred in finding that the probative value of this evidence outweighed its prejudicial potential. We find that this case is distinguishable from those cases relied upon by appellant and hold that the trial court did not err.

As cited by appellant, the direct evidence cases, which prohibit the admission of extraneous offense evidence to show an accused's identity, involve situations where the accused had committed other offenses similar to the one charged. *See Redd v. State*, 522 S.W.2d 890 (Tex.Crim.App.1975); *Rogers v. State*, 484 S.W.2d 708 (Tex.Crim. App.1972). In each of those cases, the similar offenses were irrelevant to the charged offense except to show that the accused's conduct, for which the accused was charged, was consistent with his similar criminal conduct and, perhaps, to add credence to direct identification testimony.

However, in the present case, the extraneous offenses were not similar to the charged offense but, instead, concerned appellant's conduct subsequent to the charged offense which was probative of the assailant's identity. More importantly, instead of showing that appellant's conduct was consistent with similar criminal conduct, the extraneous offense evidence here directly incriminated appellant in the offense charged. The extraneous offense evidence in the present case was thus much more probative than the extraneous offense evidence in the other cases involving similar criminal conduct; and, while the extraneous offense evidence was still preju-

188

dicial, its probative value outweighed its prejudicial potential.

 We further note that, in situations like this, the term "res gestae" has been used to allow the introduction of such extraneous offense evidence concerning an accused's subsequent criminal conduct. *See Mitchell v. State,* 650 S.W.2d 801 (Tex.Crim.App.1983). However, as recently noted in *Maddox v. State,* 682 S.W.2d 563 (Tex.Crim.App.1985) (Clinton, concurring) (not yet published), the term "res gestae" adds little more than confusion to any legal discussion because so many wholly unrelated types of evidence, which may or may not be admissible for a diversity of reasons, are labeled "res gestae." At trial, evidence of what occurs immediately prior and subsequent to the commission of an offense is always admissible under the reasoning that events do not occur in a vacuum and that the jury has a right to have the offense placed in its proper context so that all evidence may be realistically evaluated. When such evidence is offered under this "context of offense" rationale, the prejudicial nature of the evidence will rarely render it inadmissible so long as it truly sets the stage for the jury's comprehension of the whole criminal transaction. *Maddox,* 682 S.W.2d at 566. Appellant's sole ground of error is overruled.

The judgment of the trial court is AFFIRMED.