**Timothy Brian COLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–86–0258–CR.**

Court of Appeals of Texas, Amarillo.

Aug. 17, 1987.

Rehearing Denied Sept. 14, 1987.

Brown, Harding, Brown & Tabor, Mike Brown, Lubbock, for appellant.

Travis Ware, Dist. Atty., R. Deniece Jones, Asst. Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellant Timothy Brian Cole brings this appeal from his conviction of aggravated sexual assault and the consequent jury-assessed punishment of twenty-five years confinement in the Department of Corrections. We affirm that conviction.

In attacking his conviction, appellant asserts four points of error. He argues the trial court erred in (1) excluding evidence contained in his bill of exception; (2) admitting hearsay evidence concerning the results of chemical tests performed by an absent Department of Public Safety chemist; (3) failing and refusing to give a limiting charge on extraneous offenses in its charge on punishment; and (4) in admitting evidence of the victim's past sexual behavior, in violation of Rule 412, Texas Rules of Criminal Evidence.

In this case, on or about March 24, 1985, at about 10:00 p.m., the victim, M___ J___ M___, a Texas Tech University co-ed was parking her automobile on the parking lot of the St. John's United Methodist Church in Lubbock. A man walked up behind her car and asked if she would help him boost his car with some jumper cables. She had rolled down her car window to tell him that she had no such cables when the man reached in the car and unlocked the door. After he unlocked the door, he pulled out a knife, got inside the car and, threatening the victim with the knife, forced her head down and drove the automobile to a field some three or four miles from Lubbock. After stopping the car, the victim's assailant performed and forced her to perform various sexual acts which gave rise to the instant charge.

At his bill of exception hearing, appellant called two witnesses, Roberto Garcia and Walter Crimmins. Roberto Garcia testified that on or about February 1, 1985, he was employed as a police officer with the city of Lubbock. On that date he was called to investigate an aggravated sexual assault upon one T___ R___ H___. That victim was also abducted from the lot of the St. John's United Methodist Church by a black man in a manner similar to the instant case. In the course of the investigation, Garcia recovered some latent prints from the inside of the car belonging to T___ R___ H___. He also testified that he thought it was appropriate to search for T___ R___ H___'s rapist's fingerprints in those spots. Walter Crimmins testified that he was a police fingerprint identification expert. He examined the fingerprints submitted to him by Officer Garcia and they did not match appellant's fingerprints.

In argument under his first point, appellant points out the similarities in the assaults on M___ J___ M___ and T___ R___ H___. During the course of each assault, the victim was forced to submit by the threatened use of a knife after having been transported in the victim's car to a secluded location. The assaults were each made by a black male answering the same general description on a weekend night and each victim was robbed of personal belongings after

the assault. After the assaults, each victim was allowed to drive her car back to the city of Lubbock and let her assailant out of the car. He also emphasizes that at some point in the investigations, the officers thought there was a possibility that the same assailant victimized both women. Appellant reasons that, because of these similarities in the two assaults, one might believe that they were committed by the same person. Bottomed on that premise, he continues, since the prints which may have been those of T___ R___ H___'s assailant did not match those of appellant, the fingerprint evidence was relevant to make it less probable that appellant sexually assaulted the victim in this case. The evidence, he says, impeaches the victim's identification of the appellant as the culprit and could well have raised a reasonable doubt as to his guilt.

■■■ While there is almost a complete paucity of cases wherein a defendant has tendered evidence of an extraneous offense, the cases are numerous where the State has attempted the introduction of such evidence. The established rule in such instances, prior to the adoption of Texas Rules of Criminal Evidence 401–403, was that proof of similar happenings are irrelevant to the contested material issues in the case on trial and are, therefore, inadmissible. *Murphy v. State,* 587 S.W.2d 718, 721 (Tex.Crim.App.1979). That rule, however, was subject to the qualification that such an extraneous transaction might become admissible upon a showing that the transaction was relevant to a contested material issue in the case and that the relevancy value of the evidence outweighed its inflammatory or prejudicial potential. *Id.* Where, as here, identity was the contested material issue, the required predicate for admission would be a showing that the extraneous offense was so nearly identical in method to the instant offense as to earmark it the handiwork of the same person. More is required than the mere repeated commission of crimes of the same class but there must be a common characteristic so unusual and distinctive as to be similar to a signature. That determination of necessity had to have been made on a case-by-case

basis and, if there was no sufficiently distinctive characteristic, then any relevancy of the evidence did not outweigh its prejudicial potential. *See Collazo v. State,* 623 S.W.2d 647, 648 (Tex.Crim.App.1981). Our task in this case, then, is twofold. First, we must determine the effect of Texas Rules of Criminal Evidence 401–403 upon that pre-existing rule, and second, what effect the tender of the evidence by a defendant rather than the State has upon its admissibility.

Texas Rule of Criminal Evidence 401 provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable then it would be without the evidence.

Texas Rule of Criminal Evidence 402 says:

All relevant evidence is admissible, except as otherwise provided by constitution, by statute, by these rules or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible.

Texas Rule of Criminal Evidence 403 explicates:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

It is appellant's position that the effect of Rules 402 and 403, considered together, is to provide that relevant evidence is admissible unless the negative effects substantially outweigh its probative value. This, he says, is a departure from the prior Texas law requiring that the probative value of evidence must outweigh its inflammatory nature to be admissible. He further reasons that the "substantially outweighed" provision of Rule 403 is a high standard and should be used to exclude relevant evidence only in exceptional circumstances. Moreover, in balancing the probative value of the evidence and its prejudicial effect,

under Rule 403, he says, the trial court should consider the effectiveness of a cautionary instruction in limiting the jury's consideration of the evidence to the purpose for which it is admissible. He also argues that the danger of unfair prejudice referred to in Rule 403 is that of prejudice to a criminal defendant and not to the prosecution. Therefore, he concludes, the fingerprint testimony was relevant, and since it could have properly been admitted with a limiting instruction, its exclusion requires reversal.

In constructing his argument, appellant points out the lack of Texas cases construing Rules 401–403 because of their recent adoption. Since the rules are based upon the like Federal Rules of Evidence, he correctly reasons that federal decisions construing the rules are helpful in this case and, where applicable, we will likewise rely upon them.

■ Initially, we note that the federal courts have considered that determination as to relevancy and admissibility of this type of evidence is a matter resting within the discretion of the trial court. *United States v. Gorel*, 622 F.2d 100, 105 (5th Cir.1979). That discretion is broad, *United States v. Hollister*, 746 F.2d 420, 422 (8th Cir.1984), and the trial court's determination should be upheld unless that court abused its discretion. *United States v. Kirk*, 528 F.2d 1057, 1061 (5th Cir.1976). This, of course, was the established rule in Texas prior to our adoption of the Rules of Criminal Evidence. *See Johnson v. State*, 698 S.W.2d 154, 160 (Tex.Crim.App.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). It is logical, then, that the same test be applied under these rules. Our review, then, as to whether the fingerprint evidence was correctly excluded, is limited to determining whether the trial court abused its discretion based upon our examination of the record as a whole. *United States v. Jarabek*, 726 F.2d 889, 903 (1st Cir.1984).

■ Moreover, in their construction of those rules, the federal courts have recognized that although the definition of "relevant evidence" in Rule 401 is broad, it is not without limit. Such evidence must be probative of a fact of consequence in the matter and must have a tendency to make the existence of that fact more or less probable than it would have been without that evidence. *United States v. Hollister*, 746 F.2d at 422. In *Holt v. United States*, 342 F.2d 163 (5th Cir.1965), the Court approved the statement that the admission of evidence such as that here in question should be limited to instances where it was not too remote in time, nor too weak in probative quality, and where it was so connected with the act forming the issue on trial as to indicate a relevant relationship. *Id.* In *Jackson v. State*, 551 S.W.2d 351 (Tex.Crim.App.1977), that explication was also specifically noted and approved with the comment that it represented a sound principle of the law of evidence. *Id.* at 352. While that approval by the Court of Criminal Appeals was made prior to the adoption in Texas of the Rules of Criminal Evidence, it remains a logical and viable test to be applied by a trial court in its determination of "relevant evidence" within the purview of Rule 401 whether that evidence is tendered by the State or the defendant.

■ Summarized, the excluded evidence was that another Texas Tech University student was assaulted slightly under sixty days prior to this case under somewhat similar circumstances. In the investigation of the earlier victim's car, some latent prints were taken off the inside door handles and off of the rearview mirror. The officer testified that the purpose of this endeavor was to try to recover the fingerprints of the victim's assailant and that "it was appropriate to search for the rapist's fingerprints on the door handle and the rearview mirror." Another officer testified that those fingerprints were compared to those of this appellant and were different. There was no testimony as to the names and number of people who might have been in the victim's car on or about the day of the rape or that any attempt was made to compare the prints of any of these people with the prints taken from the car. There was no testimony as to the probable length of time that such fingerprints would have

remained on the location where they were found, *i.e.*, whether they might be considered as "fresh" or not. In short, there is an absence of any testimony from which a reasonable inference could be drawn that the fingerprints were indeed those of the assailant.

While the circumstances surrounding the first abduction and assault are similar to those involved in the instant case, the possible connection of the fingerprints in question to the assailant in the first case is too tenuous and weak in probative quality to support any reasonable inference as to the guilt or innocence of this appellant. It therefore lacks sufficient connection with the identity issue in the instant case to make it relevant. We do not, therefore, find that the trial court abused its discretion in excluding the fingerprint evidence. Appellant's first point of error is overruled.

In his second point, appellant says the trial court erred in admitting hearsay evidence concerning the results of chemical tests performed by an absent Department of Public Safety chemist. The evidence about which appellant complains was a letter report and a supplemental letter report from Warren R. Snyder, a chemist-toxicologist employed by the Department of Public Safety at Lubbock. In the report, Mr. Snyder tells of the results of tests conducted upon physical evidence collected at the medical examination of the victim. James Martin Thomas, the supervising chemist with the DPS lab in Lubbock, was allowed to testify, over objection, as to the tests conducted and the results of the tests shown on the report.

Appellant contends that this hearsay statement of Snyder was admitted in contravention of that portion of Texas Rule of Criminal Evidence 803(8)(B) which retains the hearsay prohibition of Rule 802 as to "matters observed by police officers and other law enforcement personnel." In support of that proposition, he places primary reliance upon the Court's decision in *United States v. Oates*, 560 F.2d 45 (2nd Cir. 1977). In that opinion, the Court does indeed hold that similar testimony by one government chemist about the report of another government chemist was within the purview of Federal Rule of Evidence 803(8)(B) which is identical in wording to our Rule 803(8)(B). *Id.* at 84. As we have commented elsewhere in this opinion, our rules are derived from the Federal Rules of Evidence and, in the construction of our rules, in the absence of analogous explication by Texas courts, federal decisions are of considerable persuasive value, even though it is well established that in such matters, we are not bound by decisions of lower federal courts. *Flores v. State*, 487 S.W.2d 122, 126 (Tex.Crim.App.1972).

Our examination of the *Oates* case reveals that that Court put heavy emphasis upon its perception of congressional intent in arriving at its conclusion that receipt of that testimony was not permissible because of Federal Rule 803(8)(B), nor was it admissible under Federal Rule 803(6). Federal Rule 803(6), incidentally, is identically worded to our Rule 803(6).

However, as appellant recognizes, our Rule 803(6) is, in effect, a codification of former article 3737e of the Texas Revised Civil Statutes Annotated (Vernon Supp. 1987), the "Business Records Act." Under that Act it was established that an expert such as Thomas may testify about test results made by another chemist in his laboratory, *Kent v. State*, 374 S.W.2d 671 (Tex.Crim.App.1963), and that a custodian of the records of a laboratory may testify as to tests made by chemists under his supervision. *Coulter v. State*, 494 S.W.2d 876 (Tex.Crim.App.1973).

Those holdings have been subject to the qualification that evidence within the ambit of a recognized exception to the hearsay rule should not be admitted if it does not have the indicia of reliability sufficient to insure the integrity of the fact finding process commensurate with the constitutional right of confrontation and cross-examination. *Coulter v. State*, 494 S.W.2d at 882. In the words of the *Coulter* Court:

It must be determined in each instance whether the particular record is of such trustworthiness as to guarantee the same protection provided by the constitutional rights of confrontation. The par-

ticular record and its relationship to the particular case in which it is offered are a part of the circumstances to be considered in determining whether the record has the indispensable fundamental trustworthiness necessary for its admission into evidence.

*Id.* at 884.

█ Since testimony such as that challenged here has long been admissible under the "Business Records Act," and, since Rule 803(6) is a codification of the Act, we think it consistent to hold that the tendered testimony fell within the ambit of Rule 803(6), and, when tendered with the necessary indicia of trustworthiness, is admissible. We have carefully examined this record and find that it contains adequate indicia of trustworthiness to surmount any constitutional attack. Thomas was an expert in the field and was the supervisor of the chemist performing the initial tests. In addition, the witness himself performed subsequent tests upon at least some of the material submitted for analysis. Moreover, the witness was laboriously cross-examined by appellant's able counsel both as to the tests performed by him and by the chemist he supervised, the methods used, and the rather inclusive results of those tests. Appellant's second point is overruled.

█ In his third point, appellant says the trial court erred in refusing to give a limiting charge on extraneous offenses in its charge on punishment. As a basis for this point, appellant says that both the State and the defense introduced evidence of similar assaults, including that of T___ R___ H___, which took place in or near the Texas Tech University campus. However, examination of the portions of the record designated by appellant in support of his point show that this type of evidence was first injected by appellant as a matter of trial strategy. In such an instance, this Court has previously specifically held that an appellant is not entitled to a limiting instruction at the punishment phase of the trial. *See Gonzales v. State,* 672 S.W.2d 618, 620 (Tex.App.—Amarillo 1984, no pet.). We adhere to that decision. *See also Rodriguez*

*v. State,* 687 S.W.2d 505, 508 (Tex.App.—Houston [1st Dist.] 1985, no pet.); *Crow v. State,* 648 S.W.2d 17, 18 (Tex.App.—Dallas 1983, no pet.). Appellant's third point of error is overruled.

In his fourth point, appellant says that the trial court erroneously admitted evidence of the victim's past sexual behavior, an act, he says, which violated Texas Rule of Criminal Evidence 412. In relevant part, Rule 412 provides:

(a) In a prosecution for ... aggravated sexual assault, ... reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible.

(b) [E]vidence of specific instances of an alleged victim's past sexual behavior is not admissible unless:

\*  \*  \*  \*  \*  \*

(3) its probative value outweighs the danger of unfair prejudice.

The testimony giving rise to this point occurred after the victim had been driven in her car to the field outside Lubbock and shortly prior to the assault itself. The record shows the following dialogue:

Q. What did the black man do at this point in time when he stopped the vehicle?

A. When he stopped, I didn't know what he was going to do, and I asked him what he wanted—

·(objection and ruling deleted)

A. He said, "Let's get it on."

Q. (By Mr. Darnell:) What did you say to him?

A. I said I did not know what he meant.

Q. And what did he respond to you when you said that?

A. He said, "I want to screw you."

Q. What did you respond to him?

A. I told him that I was a virgin, that I was saving myself for marriage.

Again, in considering the effect of Rule 412 in this situation, we are without the benefit of direct precedent. However, both the State and appellant cite as instructive and give primary emphasis to *Allen v. State,* 700 S.W.2d 924 (Tex.Crim.App.1985),

and *Bell v. Harrison,* 670 F.2d 656 (6th Cir.1982). In *Bell,* the appellant attempted to cross-examine a prosecutrix about her prior sexual activity and was prevented from doing so by the state trial judge under the Tennessee rape shield law. That law, in general terms, required a defendant to demonstrate the relevance of such evidence before the victim was exposed to what the court termed as the "embarrassing and humiliating exposure of, or questioning about, his or her social life or sexual history." 670 F.2d at 659. The Court held that the requirement of such a predicate was constitutionally permissible. *Id.*

In *Allen,* the defendant attempted to elicit from the victim testimony that she had told her abductor that she was not a virgin at the time of her abduction. This testimony was excluded by the trial court, an action which appellant said constituted reversible error. He tendered that evidence for the purpose of impeaching complainant's credibility as to her denial of consent to that appellant's advances. En route to affirming the court's action, the Court engaged in an extensive discussion of then section 21.13 of the Texas Penal Code Annotated [Added by Act of May 15, 1975, ch. 203, § 3, 1975 Gen. & Spec. Laws 476, 477] (now Rule 412 of the Rules of Criminal Evidence), the rape shield law. The Court pointed out that, under that statute, if a defendant claims a victim's past sexual conduct is relevant, the defendant must make a preliminary showing that the testimony is material to the case. The defendant in *Allen,* the Court said, failed to do so. Whether the victim was or was not a virgin was not material to any issue in the case and it was in this context that the Court said any probative value of the tendered testimony was outweighed by its inflammatory or prejudicial nature.

■ However, neither of these cases or the principles enunciated in them are determinative of the question before us. It has long been established in Texas that evidence of what occurs immediately prior and subsequent to the commission of an offense is always admissible under the reasoning that events do not occur in a vacuum, and the jury has a right to have the offense placed in its proper context so that all evidence may be realistically evaluated. *Albrecht v. State,* 486 S.W.2d 97, 101 (Tex. Crim.App.1972); *Gonzalez v. State,* 688 S.W.2d 185, 188 (Tex.App.—Corpus Christi 1985, no pet.). Such evidence may be considered by the jury both on the question of guilt and in determining the punishment to be assessed. *Williams v. State,* 535 S.W.2d 637, 639 (Tex.Crim.App.1976); *Bowles v. State,* 156 Tex.Cr.R. 548, 244 S.W.2d 811, 812 (1951). When such evidence is offered under the "context of offense" rationale, the prejudicial nature of the evidence will rarely render it inadmissible so long as it truly sets the stage for the jury's comprehension of the whole criminal transaction. *Maddox v. State,* 682 S.W.2d 563, 566 (Tex.Crim.App.1985); *Gonzalez v. State,* 688 S.W.2d at 188. Whether the evidence falls within the "context of offense" lies within the sound discretion of the trial court, and an appellate court will not reverse unless a clear abuse of that discretion is shown. *Williams v. State,* 535 S.W.2d at 639–40.

■ The evidence here in question is so inextricably connected with the sexual assault itself both as to time and circumstance as to have been admissible under the above doctrine. We do not believe the Court of Criminal Appeals, by its adoption of the Rules of Criminal Evidence, intended to weaken or denigrate a rule so long and well established. It is more reasonable to assume that Rule 412 is directed at attempts to introduce evidence related to sexual behavior of a victim not so closely related to the assault itself as to fall within the "context of offense" doctrine. Viewed in that light, it becomes apparent that the receipt of the testimony in question did not violate any provision of Rule 412. We find no abuse of discretion in the trial court's admission of the testimony. Appellant's fourth point of error is overruled.

In summary, all of appellant's points of error are overruled and, there being no reversible error, appellant's conviction is affirmed.