James D. MARTIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 85 181 CR.

Court of Appeals of Texas, Beaumont.

Dec. 3, 1986.

Rick Brass, Houston, for appellant.

Mary Ann Turner, Asst. Dist. Atty., Conroe, for appellee.

## OPINION

BURGESS, Justice.

Appellant was convicted by a jury of Sexual Assault. The court assessed punishment at 10 years confinement in the Texas Department of Corrections. A single ground of error is urged, viz:

The trial court committed reversible error in admitting evidence of an extraneous offense on the issue of identity because there were insufficient distinguishing characteristics common to both the extraneous offense and the instant offense to outweigh the inherently prejudicial effect of such evidence.

On October 30, 1984, at approximately 11:00 p.m., D.H. was walking home along a roadway when an assailant grabbed her around the neck from behind, and dragged her to a grassy area off the roadway. The assailant threw her to the ground and asked her to perform oral sex on him. After D.H. described an inability to perform such an act, her assailant pinned her to the ground, pulled down her slacks and undergarments and raped her. D.H. identified appellant as her assailant in a photographic spread, a live line-up, and in the courtroom. Appellant produced witnesses to show he was visiting friends from 6:00 p.m. until midnight on the night of the rape.

The state then produced testimony by S.A. that on November 4, 1984, at approximately 10:30, she was in the laundry room of her apartment complex when appellant approached her and asked where to find a telephone. S.A. gave appellant directions to a telephone and continued to get her clothes out of the dryer. She was grabbed from behind with a hand being placed around her shoulder and a hand underneath her shorts. The assailant was attempting to pull her shorts down. S.A. was able to break from the assailant's grasp and the assailant ran to the door. S.A. tried to run past him and was pushed in a corner, falling over a garbage can. The assailant then ran out of the laundry room. S.A. identified appellant as her assailant. The state also produced evidence that the two locations were within one mile of another.

The law concerning use of extraneous offense evidence is discussed at length in *Moore v. State*, 700 S.W.2d 193, 199–201 (Tex.Crim.App.1985). In *Collazo v. State*, 623 S.W.2d 647, 648 (Tex.Crim.App.1981),

we find the rule of similarity that governs our decision:

> When identity has become a contested, material issue, as it did in this case, there must be a showing that the extraneous offense which was committed by the defendant was 'so nearly identical in method [to the instant offense] as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature.' E. Cleary, *McCormick's Handbook of the Law of Evidence* 449 (2d ed. 1972).

This general rule was reaffirmed in *Dickey v. State,* 646 S.W.2d 232 (Tex.Crim.App. 1983). In *Plante v. State,* 692 S.W.2d 487 (Tex.Crim.App.1985), the court noted that in cases where identity was in issue, a high degree of similarity is required.

Thus, the admissibility question is governed by whether there are sufficient similar characteristics between the primary offense and the extraneous offense. Each case will inevitably turn on its own unique facts. There is a particular dilemma when the primary offense is a completed sexual assault and the extraneous offense is an attempted sexual assault because there are fewer characteristics to compare.

The state urges that the following characteristics were sufficiently similar to admit testimony concerning the attempted rape:

(a) both victims were single white women

(b) both offenses were within a five day period

(c) both offenses were within one mile of another

(d) both offenses were committed in public places

(e) both places were places where the assaults could have been possibly detected

(f) both victims were grabbed from behind

(g) appellant attempted to remove or removed the shorts or slacks of both victims, and

(h) both assaults were committed at approximately the same time of the evening.

Some of these suggested characteristics are similar, yet neutral for our analysis. In order to look for a "signature", we must focus on similarities that are unique to the individual perpetrator rather than distinctive of the type of offense committed. The fact that both assaults were from behind, for instance, is not distinctive enough to earmark the attempted rape as "the handiwork of the accused" without some further similarity in the manner of those attacks. Nor does the fact that in both incidents the perpetrator removed or attempted to remove his victims' clothing present a distinctive similarity that specifically pinpoints the accused.[1] Furthermore, we do not agree that the laundry room of a private apartment complex is similar to a public roadway. After reviewing the identifying characteristics, we agree that there are distinctive similarities vis a vis the victims, locations, and times of the two offenses. Balanced against these likenesses, however, are certain dissimilarities.

In the primary offense, appellant grabbed D.H., without warning, from behind on a dark road. In the extraneous offense, he approached S.A. in the lighted laundry room and engaged her in conversation. In the primary offense, appellant suggested oral sex, and there was no such suggestion in the laundry room. Thus, in analyzing both similarities and dissimilarities, we are unable to find the type of distinctive "signature" required by case

1. There are a limited number of ways to approach and grab someone. Likewise, there are a limited number of ways to forcibly disrobe a person's lower portion. Therefore, one must analyze the manner of these acts rather than the acts themselves, to determine a distinctive characteristic.

law. The trial court committed reversible error in admitting the extraneous offense.

REVERSED AND REMANDED.

BROOKSHIRE, Justice, dissenting.

With respect, this dissent is filed. It is settled that evidence of an extraneous offense is admissible to rebut a defensive theory raised by the accused. *Dickey v. State*, 646 S.W.2d 232 (Tex.Crim.App.1983); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Crim. App.1972).

The Appellant, Martin, definitely placed the issue of his identity before the jury by offering the defense of "alibi". This opened the door for the State to introduce evidence of an extraneous offense for identification purposes. *Wintters v. State*, 616 S.W.2d 197 (Tex.Crim.App.1981); *Jones v. State*, 587 S.W.2d 115 (Tex.Crim.App.1978).

In *Dickey, supra,* both the primary offense and the extraneous offense occurred within a 5 day period, both victims being white college coeds. The assailant, in both cases, had worn sunglasses. The coeds had been assaulted at or near the places where they lived. In both assaults, the assailant held a sharp object to each victim's throat. These similarities were held to be sufficient.

In this case on appeal, the primary offense and the extraneous offense occurred within a 5 day period of time, both victims being white, single women. The assailant in both instances was said to have a stubble-type beard. Each of the victims was assaulted within an area of about a 1 mile radius in public places. Both victims, in our record, were grabbed and attacked from behind. The assaults occurred at approximately the same time of the evening.

Also, the trial judge carefully instructed the jury, limiting the purpose for which the jury could consider "an offense other than the offense alleged against him in the indictment in this case ..." The court charged further that "you may only consider the same in determining the identity of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose." The trial court charged further, on the issue of alibi thusly:

"Now, if you have a reasonable doubt as to the presence of the defendant at the place where the offense was committed, if an offense was committed, at the time of the commission thereof, then you will find the defendant not guilty."

The majority readily concedes that "D.H. identified appellant as her assailant in a photographic spread, a live line-up, and in the courtroom. Appellant produced witnesses to show he was visiting friends from 6:00 p.m. until midnight on the night of the rape."

The similarities are sufficient and, under this record, no reversible error is shown. I would affirm the conviction.