ACCEPTED
05-17-00506-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/1/2018 12:22 PM
LISA MATZ
CLERK

# NO. 05-17-00506-CR

## IN THE COURT OF APPEALS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/1/2018 12:22:17 PM
LISA MATZ
Clerk

## FOR THE

## FIFTH JUDICIAL DISTRICT OF TEXAS

## DALLAS, TEXAS

---

**TEMMIE COOLEY,**

*APPELLANT*

vs.

**THE STATE OF TEXAS,**

*APPELLEE.*

---

On appeal from the 416th Judicial District Court,
Collin County, Texas
The Honorable Andrea Thompson presiding.
Trial Cause No. 416-82809-2014

## APPELLANT'S BRIEF

Stephanie Hudson
STEPHANIE DUECKER HUDSON, PLLC
1333 W. McDermott Dr., Suite 150
Allen, TX 75013
469.519.7815
972.530.6218 Fax
stephaniehudsonlaw@gmail.com
State Bar No. 24007130
Attorney for Appellant

# TABLE OF CONTENTS

TABLE OF CONTENTS........................................................................................ii

INDEX OF AUTHORITIES.............................................................................iii

STATEMENT OF THE CASE...........................................................................7

ISSUES PRESENTED.........................................................................................9

STATEMENT OF FACTS ...............................................................................10

SUMMARY OF ARGUMENT .......................................................................17

APPELLANT'S POINT OF ERROR NUMBER ONE....................................18

> THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING EVIDENCE OF AN EXTRANEOUS OFFENSE DURING THE GUILT / INNOCENCE PHASE SINCE SUCH EVIDENCE WAS NOT ADMISSIBLE TO SHOW IDENTITY, AND THE PROBATIVE VALUE SUBSTANTIALLY OUTWEIGHED BY UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, AND CLEARLY MISLED THE JURY...........................................................................................................18

ARGUMENT AND AUTHORITIES ..............................................................18

PRAYER ...........................................................................................................41

CERTIFICATE OF COMPLIANCE ..............................................................42

# INDEX OF AUTHORITIES

## Cases

*Albrecht vs. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972)......................19

*Almanza v. State*, 686 S.W.2d 157, 157 (Tex. Crim. App. 1984) ..................... 27

*Bachhofer v. State*, 633 S.W.2d 869, 872 (Tex. Crim. App. 1982)...........27, 30

*Blackmon v. State*, 644 S.W.2d 12, 14 (Tex. App. Dallas, 1982) ................... 23

*Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987)................... 21, 28

*Castillo v. State*, 739 S.W.2d 280, 290 (Tex. Crim. App. 1987)...................... 29

*Clark v. State*, 693 S.W.2d 35, 36- 37 (Tex. App. Houston [1st Dist.] 1985, *pet. ref.*).................................................................................................. 27

*Clark v. State*, 726 S.W.2d 120, 122-123 (Tex. Crim. App. 1986)...................20

*Cobb v. State*, 503 S.W.2d 249, 251 (Tex. Crim. App. 1973)...........................23

*Collazo v. State*, 623 S.W. 2d 647, 649 (Tex. Crim. App. 1981)................24, 28

*Collazo v. State*, 623 S.W.2d 647, 648 (Tex. Crim. App. 1981)...................... 28

*Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001) ........................ 35

*Connor v. State*, 773 S.W.2d 13, 15 (Tex. Crim. App. 1989)............................38

*Corley v. State*, 987 S.W.2d 615, 619 (Tex. App. Austin 1999) ....................... 29

*Dubose v. State*, 915 S.W.2d 493, 497-498 (Tex. Crim. App. 1996)...............18

*Ferrell v. State*, 429 S.W.2d 901, 903 (Tex. Crim. App. 1968) .................23, 26

*Ford v. State*, 484 S.W.2d 727, 729-730 (Tex. Crim. App. 1972).............23, 28

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).....35, 36, 37, 38

*Green v. State*, 934 S.W.2d 92, 101-102 (Tex. Crim. App. 1996) ....... 18, 31, 32

*Hammer v. State*, 296 S.W.3d 555, 568–69 (Tex. Crim. App. 2009)............ 35

*Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001) ..................34

*Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1990)........................39

*Howland v. State*, 966 S.W.2d 98, 103 (Tex. App. Houston [1st Dist.] 1998), *affirmed*, 990 S.W.2d 274 (Tex. Crim. App. 1999) ..........................................31

*Hoyos v. State*, 982 S.W.2d 419, 422 (Tex. Crim. App. 1998) ..........................18

*Huddleston v. United States*, 485 U.S. 681, 686 (1988).....................................30

*James v. State*, 554 S.W.2d 680, 683 (Tex. Crim. App. 1977) ..........................28

*Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004) .....................21

*Lang v. State*, 698 S.W.2d 735 (Tex. App. El Paso 1985, *no pet.*) ...................30

*Lazcano v. State*, 836 S.W. 2d 654, 659
(Tex. App. - El Paso 1992, *pet. ref'd*)..........................................................25

*Malone v. State*, 849 S.W.2d 414 (Tex. App. Beaumont 1993, *no pet.*) ........34

*Martin v. State*, 722 S.W.2d 172, 174 (Tex. App. Beaumont 1986, pet. ref.)..21

*McDonald v. State*, 513 S.W.2d 44, 50-52 (Tex. Crim. App. 1974).................30

*Messenger v. State*, 638 S.W.2d 883, 886 (Tex. Crim. App. 1982)..........23, 27

*Montgomery v. State*, 810 S.W.2d 372, 391
(Tex. Crim. App. 1991) (*opinion on rehearing*) ..............18, 19, 23, 32, 34, 35

*Old Chief v. United States*, 519 U.S. 172, 184 (1997) ......................................32

*Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006).........................23

*Parmer v. State*, 38 S.W.3d 661, 670 (Tex. App. Austin 2000, *pet. ref.*) 31, 32

*Plante v. State*, 692 S.W.2d 487, 491 (Tex. Crim. App. 1985) .......................27

*Rangel v. State*, 250 S.W.3d 96, 97-98 (Tex. Crim. App. 2008) .....................18

*Rankin v. State*, 974 S.W.2d 707, 719
(Tex. Crim. App. 1998) (*opinion on rehearing*)..............................................22

*Redd v. State*, 522 S.W.2d 890, 894 (Tex. Crim. App. 1975)..........................24

*Reyes v. State*, 69 S.W.3d 725, 740 (Tex. App. Corpus Christi 2002)...........27

*Robbins v. State*, 88 S.W.3d 256, 261 (Tex. Crim. App. 2002) ................19, 20

*Robinson v. State*, 701 S.W.2d 895, 898 (Tex. Crim. App. 1985)...................29

*Robledo v. State*, 480 S.W.2d 401, 402 (Tex. Crim. App. 1972) ....................28

*Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999) ........................ 33

*Simmons v. State*, 457 S.W.2d 570, 571 (Tex. Crim. App. 1970) ............... 23, 26

*Siqueiros v. State*, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985) ................... 23, 26

*Soffar v. State*, 742 S.W.2d 371, 377 (Tex. Crim. App. 1987) ........................... 19

*State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005) .............. 33, 34

*Stringer v. State*, 845 S.W.2d 400, 402
   (Tex. App. Houston [1st Dist.] 1992, *pet. ref.*) ............................................... 29

*Templin v. State*, 711 S.W.2d 30, 32-33 (Tex. Crim. App. 1986) ........ 19, 27, 36

*Turner v. State*, 754 S.W.2d 668, 672 (Tex. Crim. App. 1988) ........................ 31

*United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) ......................... 21

*Vernon v. State*, 841 S.W.2d 407, 411 (Tex. Crim. App. 1992) ........................ 20

*Voelkel v. State*, 501 S.W.2d 313, 315 (Tex. Crim. App. 1973) ........................ 29

*Walker v. State*, 588 S.W.2d 920, 922 (Tex. Crim. App. 1979) ....................... 24

*Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) ............ 17, 21

*Yates v. State*, 941 S.W.2d 357, 367 (Tex. App. Waco 1997, *pet. ref.*) ............ 31

*Ybarra v. State*, 401 S.W.2d 608, 609 (Tex. Crim. App. 1966) ....................... 28

*Yohey v. State*, 801 S.W.2d 232 (Tex. App. San Antonio 1990, pet. ref.) ...... 34

## Statutes
Tex. R. Evid. 401 and 402 ................................................................................ 19

Tex. R. Evid. 403 .................................................................................... 31, 38

Tex. R. Evid. 404(b) ..................................................................... 20, 21, 36

Tex. Rule App. Proc. 44.2(a) ......................................................................... 38

## Treatises
J. McLaughlin, Weinstein's Federal Evidence §403.02[1][a]
   at 403-406 (2006 rev.) ............................................................................... 32
S. Goode, et al., Texas Practice: Guide to the Texas Rules of Evidence,
   § 403.2 at 165 (3rd ed. 2002) ................................................................... 34

# IDENTITIES OF ALL PARTIES

**Appellant**
TEMMIE COOLEY

**Attorneys for Appellant at Trial**

Robbie McClung
MCCLUNG & FRANKLIN
2150 South Central Expressway
Suite 200
McKinney, TX 75070
214. 695.3507
rsmcclung@yahoo.com
State Bar No. 00789772

Richard K. Franklin
MCCLUNG & FRANKLIN
2150 South Central Expressway
Suite 200
McKinney, TX 75070
214. 695.3507
State Bar No. 17801540

**Attorney for Appellant on Appeal**

Stephanie Hudson
STEPHANIE DUECKER HUDSON, PLLC
1333 W. McDermott Dr., Suite 200
Allen, TX 75013
469.519.7815
972.530.6218 Fax
State Bar No. 24007130
smdhudson@gmail.com

**Presenting Authority at Trial and on Appeal for State / Appellee**

THE STATE OF TEXAS

Greg Willis
Criminal District Attorney
2100 Bloomdale Rd., Suite 20004
McKinney, TX 75071
972.548.4323
State Bar No. 21653500

Assistant District Attorneys
Michael Wesley Wynne
State Bar No. 24054218

Calli Bailey
State Bar No.  24075638

## NO. 05-17-00506-CR

## IN THE COURT OF APPEALS

## FOR THE

## FIFTH JUDICIAL DISTRICT OF TEXAS

## DALLAS, TEXAS

---

TEMMIE COOLEY,

*APPELLANT*

VS.

THE STATE OF TEXAS,

*APPELLEE.*

---

**TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:**

This brief is respectfully submitted on behalf of the Appellant, TEMMIE COOLEY. The parties will be identified as Appellant and State (Appellee). The Reporter's Record will be identified as (RR) and the Clerk's Record will be identified as (CR).

### STATEMENT OF THE CASE

Appellant was charged by indictment for murder. (CR p.20). A pre-trial hearing was held on November 15, 2016 before Judge Chris Oldner to

determine the admissibility of a 2001 murder conviction. (RR Supp v.2 p.16) No ruling on this hearing is contained in the court's record. A jury trial commenced and, presumably, ended in a hung jury on December 2, 2016. (CR p.115) On January 1, 2017 Judge Andrea Thompson was sworn in as presiding judge of the 416th Judicial District Court. (RR Supp. v.3 p.4) The pre-trial matter of the admissibility of the 2001 murder conviction was re-submitted to Judge Thompson who reviewed the transcript of the November 15, 2016 hearing to make her decision. (CR p.128) Judge Thompson held that the 2001 murder conviction was admissible during the guilt / innocence phase of Appellant's trial for a 1989 murder. (CR p.128) Appellant requested, and was granted, a running objection throughout the trial to evidence of the 2001 conviction. (RR v.2 p.9)

Appellant entered a plea of not guilty and a jury trial commenced. (RR v2 p.11) The jury found Appellant guilty, and he was sentenced by the court to eighty years confinement in the Texas Department of Criminal Justice, Institutional Division. (RR v6 p.158, v7 p.11) Appellant then filed notice of appeal. (CR p.145)

# ISSUES PRESENTED

1.    THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING EVIDENCE OF AN EXTRANEOUS OFFENSE DURING THE GUILT / INNOCENCE PHASE OF THE TRIAL.

## STATEMENT OF FACTS

On the evening of Friday, November 24, 1989, Dan "Wayne" Trimble was at home working on a friend's mother's car in his garage when his wife, Sharon Trimble, came home from work, changed clothes, and told Wayne she was going out. (RR v.4 pp.187-191) A friend of Sharon's, Rita, stayed at the house with the couple's three children that evening. (RR v.4 p.192) Wayne continued to work on the car with the friend, Reggie, and then left at some point to return the car to Reggie's mother. (RR v.4 pp.192-193) When Wayne returned home later that evening, Rita was there watching tv, and the children were asleep. (RR v.4 p.193) Wayne, Rita and Reggie sat up talking for short time, then Wayne went to bed around 1:00 – 2:00am. (RR v.4 p.194) When Wayne went to bed, Sharon was still not home. (RR v.4 p.195) While this was concerning to him, he was not concerned to the degree that he felt compelled to contact police, friends or family. (RR v.4 p.195) When she still was not home when he awoke the next morning, around 4:00 or 5:00am, Wayne started calling people. (RR v.4 p.195) After determining that three different friends and family members had not heard from her, Wayne called the police and filed a missing person's report. (RR v.4 p.196)

A missing person's report was filed with Alicia Norman with the Glenn Heights Police Department on the morning of November 25, 1989. (RR v.4 p.177) Norman went to home of Sharon and Wayne Trimble between 11-11:30am that morning. (RR v.4 p.178) Wayne reported last seeing Sharon about 10:30pm the night before. (RR v.4 p.179) A teletype was sent out making information available to other police agencies about the missing person. (RR v.4 p.180)

That same morning Timothy Michel, along with his mother and brother, were driving from their home in Allen, Texas to a nearby mall. (RR v.4 pp.27-28, 31) The road on which they were driving was a dirt road, and somewhat undeveloped. (RR v.4 p.29) As they approached the mall, Michel saw what he believed to be a body in the ditch along the right-hand side of the road. (RR v.4 p.30) As they car got a little closer, Michel could see that the body was a woman wearing a red coat, and nothing from the waist down. (RR v.4 p.29) Michel and his family proceeded to the mall where they reported what they had seen to Plano Police officer Robert Powell, who was working an off-duty job at the mall that day. (RR v.4 pp.31, 35)

Powell had Michel show him where the body was located. (RR v.4 pp.31, 36) Powell then contacted a police dispatcher to send on-duty units to

further investigate. (RR v.4 p.37) Officer John Naylor was one of the investigating officers who responded. (RR v.4 p.45-46) Based on his observations, Naylor believed the victim had died somewhere else, and the body had been dumped out of a car onto the side of the road. (RR v.4 p.48)

Detective Thomas Gramm also responded to the crime scene and took photographs. (RR v.4 pp.72, 78) Gramm observed the victim to be nude from the waist down, her bra pushed up, and wearing a red sweater. (RR v.4 p.80) A pair of red boots were found near the victim. (RR v.4 p.80) No purse was located at the scene. (RR v.4 p.81)

After receiving information via teletype about the missing person's report from Glenn Heights, Plano PD called indicating they had a person who matched description of the missing person. (RR v.4 p.180) Norman then returned to the Trimble home to report that Sharon had been found, deceased, in Plano. (RR v.4 p.180)

Detective Thomas Gramm was assigned to investigate the case on November 25. (RR v.4 p.75) Through his investigation Gramm was able to determine that an ATM transaction on Trimble's account had occurred at 10:18pm the night before her body was found from First City Bank in Lancaster. (RR v.4 p.91-92) She then called the babysitter to check in at

11:000pm (RR v.4 p.93) Trimble had told her husband that she was going to visit Charlotte Smith, but Charlotte never saw her that evening. (Charlotte did say that she left her home for a while, and that it is possible Trimble came by during this time.) (RR v.4 pp.96-97) Charlotte indicated that she had talked to Trimble at 8:30-9:00pm that evening. (RR v.4 p.125)

Gramm interviewed co-workers of Trimble's at Children's Hospital, including: Elena Harris, Joyce Stevens, Donna Landry, Temmie Cooley, Greg Richardson, and Bobby Owens on November 27, 1989. (RR v.4 pp.98, 127) Through these interviews Gramm was informed that Trimble hung out primarily with Appellant. (RR v.4 p.98) He also learned that co-workers often went clubbing together, and it was not uncommon for Trimble to get telephone numbers from multiple men at these clubs. (RR v.4 p.99)

While interviewing Appellant, Appellant denied having a sexual relationship with Trimble, and stated that Trimble had called him on the night of November 24 asking him to go out with a group from work, but he had declined. (RR v.4 pp.100, 102) During 2d interview with Charlotte Smith, Gramm learned that Trimble and Appellant had been seen "loving on each other" (RR v.4 p.110) Gramm then interviewed Appellant a second time on December 11. (RR v.4 p.116) During this interview, Appellant said he had

tried to start a sexual relationship with Trimble, but never had one. (RR v.4 p.116)

One of Trimble's friends reported seeing her car being driven by two black men on November 26 (neither was Appellant). (RR v.4 pp. 133-134) The vehicle was eventually found at apartment complex on December 14 (RR v.4 pp.107-108) Apartment manager had seen two black males get in car and drive away, then bring car back. The car then sat in the complex parking lot for two weeks before the manager reported it to police. (RR v.4 p.109) The car was checked for fingerprints, but none were found. (RR v.4 p.108)

A rape kit was done on Trimble and the presence of sperm was detected. (RR v.4 p.117, 262) According to the medical examiner who conducted the autopsy, the cause of death was ligature strangulation (RR v.5 p.31) At the conclusion of his investigation, Gramm was unable to make an arrest. (RR v.4 p.119)

Billy Meeks was assigned to investigate the case on September 12, 2002. (RR v.5 p.83) Meeks began by reviewing the previous case file, then re-interviewed several witnesses. (RR v.5 p.85) He also obtained some of biological materials collected in 1989 and sent them to a DNA lab. (RR v.5

pp.85-86) Meeks then obtained a DNA sample from Wayne Trimble and was able to exclude him as a suspect. (RR v.5 p.89) During his investigation Meeks received a letter from the Institute of Forensic Sciences stating that the DNA sample matched Appellant. (RR v.5 p.111)

After receiving this information Meeks re-interviewed Appellant at the Kaufman County jail on February 26, 2004. (RR v.5 p.118) Appellant was in jail charged with a 2001 murder. (RR v.5 p.119) During this interview, Appellant again denies ever having sex with Trimble, but says they had kissed. (RR v.5 p.126) Appellant then says that Trimble had performed oral sex on him. (RR v.5 p.127)

Meeks interviews Appellant again June 2, 2004, at which time Meeks informs Appellant of the DNA results. (RR v.5 p.132) Appellant then admits to having an ongoing sexual relationship with Trimble, including on the day she was murdered. (RR v.5 pp.136-137, 140-141)

Elizabeth Spillman took over the investigation of the case early in 2014 (RR v.5 p.153) Spillman spoke to five or six witnesses, reviewed the existing case file and recorded interviews. (RR v.5 p.153) Spillman interviewed Appellant on April 16, 2014 and again on May 21, 2014 and obtained a DNA sample from him, in order to confirm the previous DNA match. (RR v.5

pp.155, 157) During these interviews, Appellant denies having sex with

Trimble on the day of the murder. (RR v.5 p.166)

## SUMMARY OF ARGUMENT

1.  Appellant contends the trial court abused its discretion by allowing evidence of Appellant's prior murder conviction to be heard by the jury during the guilt / innocence phase of the trial since evidence of the conviction was not admissible for the purpose of proving identity, and the probative value of the evidence was outweighed by its unfairly prejudicial effect.

## APPELLANT'S POINT OF ERROR NUMBER ONE

THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING EVIDENCE OF AN EXTRANEOUS OFFENSE DURING THE GUILT / INNOCENCE PHASE SINCE SUCH EVIDENCE WAS NOT ADMISSIBLE TO SHOW IDENTITY, AND THE PROBATIVE VALUE SUBSTANTIALLY OUTWEIGHED BY UNFAIR PREJUDICE, CONFUSION OF THE ISSUES, AND CLEARLY MISLED THE JURY.

## ARGUMENT AND AUTHORITIES

Appellant alleges that the trial court abused its discretion by allowing evidence of a separate murder conviction since such evidence was not admissible to prove identity, and the probative value was substantially outweighed by unfair prejudice to Appellant.

## Standard of Review

A reviewing court should review a trial court's evidentiary rulings for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (*opinion on rehearing*). A trial court abuses its discretion when it makes an evidentiary ruling when the court's decision "lies outside the zone

of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 101-102 (Tex. Crim. App. 1996). When determining whether a trial court's evidentiary ruling was an abuse of discretion, this Court should review the ruling in light of the evidence that was before the court at the time of its ruling. *Rangel v. State*, 250 S.W.3d 96, 97-98 (Tex. Crim. App. 2008); *Hoyos v. State*, 982 S.W.2d 419, 422 (Tex. Crim. App. 1998).

A reviewing court may reverse a trial court's decision for an abuse of discretion only when it appears that the court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. *See Dubose v. State*, 915 S.W.2d 493, 497-498 (Tex. Crim. App. 1996). Even if the reviewing court would have reached a different result, it should not intercede as long as the trial court's ruling was within this "zone of reasonable disagreement." *See Montgomery v. State*, 810 S.W.2d at 380-381.

## Admissibility of Extraneous Offenses During Guilt / Innocence

A defendant must be tried on the facts alleged in the indictment and not for a collateral crime or for being a criminal generally. *Templin v. State*,

711 S.W.2d 30, 32-33 (Tex. Crim. App. 1986); *see Albrecht vs. State*, 486

S.W.2d 97, 100 (Tex. Crim. App. 1972) ("An accused is entitled to be tried on

the accusation made in the state's pleading and that he should not be tried

for some collateral crime or for being a criminal generally); *Soffar v. State*,

742 S.W.2d 371, 377 (Tex. Crim. App. 1987).

However, evidence of crimes or wrongful acts committed by a

defendant may be admitted during the guilt / innocence portion of the trial

if these collateral crimes are shown to be both material and relevant to a

contested issue in the case. *Albrecht vs. State*, 486 S.W.2d at 100. Evidence

is relevant and generally admissible if it has "any tendency to make the

existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the

evidence." *See* TEX. RULE EVID. 401 and 402.

The entry of a plea of "not guilty" is insufficient to make extraneous

offenses relevant - the defendant must raise an issue as to some matter for

which extraneous offense evidence may be admitted, such as the defendant's

intent. *Robbins v. State*, 88 S.W.3d 256, 261 (Tex. Crim. App. 2002). This

requires that the defendant raise the issue through the affirmative

presentation of defense evidence, vigorous cross-examination, or other

means. *Vernon v. State*, 841 S.W.2d 407, 411 (Tex. Crim. App. 1992) (In the defendant's prosecution for aggravated sexual assault of his minor stepdaughter, relationship evidence of prior sexual assaults by defendant against same victim were not relevant to a noncharacter conformity material issue under Texas Rule of Evidence 404(b) because the defendant did not present any witnesses or impeach complainant); *Clark v. State*, 726 S.W.2d 120, 122-123 (Tex. Crim. App. 1986) (Evidence of an extraneous offense involving the defendant and a third party erroneously admitted on issue of defendant's intent because defendant did not vigorously undermine the State's case on intent issue); *Robbins v. State*, 88 S.W.3d at 261 (The defense's cross-examination of State witnesses on the issue of Sudden Infant Death Syndrome or possibility that infant's death may have been caused by incorrectly performed CPR efforts to save the victim's life opened the door to extraneous evidence of the child's injuries while the child was in the defendant's care).

Evidence of collateral crimes or wrongful acts is not admissible against the defendant to prove the defendant's character in order to show that he or she acted in conformity with that character. TEX. RULE EVID. 404(b). Such evidence of crimes or wrongful acts are admissible to show proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or flight. TEX. RULE EVID. 404(b); *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004); *Whittington v. State*, 580 S.W.2d 845, 846-847 (Tex. Crim. App. 1979).

For a trial court to properly admit evidence of an extraneous offense during the guilt/ innocence portion of a case, the offense must be somewhat similar to the currently-charged offense. Relevance of the extraneous offense depends primarily on its similarity to the currently charged offense. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978). Further, the degree of similarity required for admission depends upon the purpose for which the extraneous offense is being admitted. *Id.* at 911. This similarity pertains to the defendant himself, not to similarities that arise from the type of offense committed. *Martin v. State*, 722 S.W.2d 172, 174 (Tex. App. Beaumont 1986, pet. ref.) (Extraneous evidence admitted where it was alleged that the defendant grabbed victims from behind and tried to remove their clothing). Such evidence does not pertain to distinctive similarities as to the currently charged offense, but similarities as to the victims, locations, and times of offenses. *Id.* Further, more similarity is required to prove identity than to prove intent. *Cantrell v. State*, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987).

When viewed objectively, if a reviewing court believes that the "relevant criteria" leads it to believe that the danger of unfair prejudice substantially outweighed the probative value of the evidence, evidence of an extraneous offense must be excluded. *Montgomery v. State*, 810 S.W.2d at 392-393. Relevant criteria includes: (1) the ultimate issue was not seriously contested by the defendant; (2) the state had other convincing evidence to establish the ultimate issue to which the extraneous evidence was relevant; (3) the probative value of the misconduct evidence was not particularly compelling; and (4) the misconduct was of such a nature that a jury instruction to disregard it for any but the proffered purpose would not likely have been efficacious. *Id*.

As the proponent of the evidence of the extraneous offenses, the State has the burden of showing admissibility. *See Rankin v. State*, 974 S.W.2d 707, 719 (Tex. Crim. App. 1998) (*opinion on rehearing*). As the following arguments will show, the State failed to meet its burden.

**Evidence of the Extraneous Offense Presented to the Jury During the Guilt / Innocence Phase Was Not Admissible Based Upon Identity.**

Evidence of an extraneous offense is admissible if the identity of the person who committed the current charged offense on trial is at issue and

the extraneous offense is so similar that the State can argue that the extraneous offense and current offense were committed by the defendant. *Messenger v. State*, 638 S.W.2d 883, 886 (Tex. Crim. App. 1982); *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); *Cobb v. State*, 503 S.W.2d 249, 251 (Tex. Crim. App. 1973); *Blackmon v. State*, 644 S.W.2d 12, 14 (Tex. App. Dallas, 1982); *Ford v. State*, 484 S.W.2d 727, 729-730 (Tex. Crim. App. 1972). "Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature." *Messenger v. State, Id.* at 886 (internal citations omitted).

If there is no sufficiently distinctive characteristic, then the relevancy of the evidence cannot outweigh its prejudicial potential. *Ford v. State*, 484 S.W.2d at 729-730.

The defendant may inadvertently admit the extraneous offense by thoroughly cross-examining the State's only identifying identification witness during cross-examination. *Siqueiros v. State*, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985); *Simmons v. State*, 457 S.W.2d 570, 571 (Tex. Crim. App. 1970); *Ferrell v. State*, 429 S.W.2d 901, 903 (Tex. Crim. App. 1968). But if the defense fails to properly impeach the State's only identification

witness, or only one of several witnesses are impeached, evidence of such an extraneous offense is not admissible to prove identity. *Walker v. State*, 588 S.W.2d 920, 922 (Tex. Crim. App. 1979); *Redd v. State*, 522 S.W.2d 890, 894 (Tex. Crim. App. 1975).

In excluding evidence of an extraneous offense in a sexual assault case, the Court of Criminal Appeals has held, "That appellant assaulted adult women as they returned to their cars in public places was not so distinctive as to mark these assaults as appellant's handiwork. To say that two sexual assaults are similar because they are both acts of sadistic sexual deviations is not to point to a device that is so unusual and distinctive as to be like a signature; it is merely to characterize a feature of that general class of offenses. Almost any two sexual assaults could be characterized as sadistic acts, just as almost any two murders could be characterized as violent acts. This is nothing more than dressing in psychological garb the very thing that the law on evidence of extraneous offenses forbids: proof of the repeated commission of a class of offenses to demonstrate that the defendant is a criminal (or sexual deviate) generally." *Collazo v. State*, 623 S.W. 2d 647, 649 (Tex. Crim. App. 1981).

Similarly, another appellate court has stated, "that appellant choked and sexually assaulted two young females in the El Paso area within a six-week time frame after meeting them at a social gathering is insufficiently similar to justify admission. "[W]e find these general 'similarities' to be wholly innocuous as such features would tend to be common to many cases. It is not enough to say the offenses are sufficiently similar. Rather, the offenses must be distinctively similar. Nothing within the instant 'similar' facts indicates an unusual and distinctive method or commission of an offense such that it can be considered an earmark of the perpetrator's handiwork." *Lazcano v. State*, 836 S.W. 2d 654, 659 (Tex. App. - El Paso 1992, *pet. ref'd*).

During the guilt / innocence phase of the trial the State offered evidence of a subsequent murder charge, committed in 2001, for which Appellant plead guilty under the theory that it was admissible as identity evidence under Rule 404(b). (RR Supp.v.2 pp.16-17) However, all the State showed was the "mere repeated commission of a crime of the same class, such as repeated burglaries…"

The *only* evidence offered by the State to connect Appellant to the 1989 murder was the presence of his DNA. However, a logical explanation

exists for the presence of his DNA – that he and the victim were involved in a consensual sexual relationship. While it is true that both cases involved victims who were killed by ligature strangulation and then dumped on the side of a road, there was other evidence that connected Appellant to the 1989 murder. No one saw Appellant and the victim together on the evening she was murdered. (RR v.5 p.148) But in the 2001 case, the victim told a friend that she was going to see Appellant on the day she was murdered, her body was found wrapped in a bed sheet that belonged to one of Appellant's children, calls were placed from her cellphone after she was killed by people associated with Appellant, and Appellant's fingerprints were found inside her car when it was recovered a few weeks after she was killed. None of this is true of the 1989 case. The two offenses were not similar enough to rise to the level of showing a "signature" as contemplated by the Court of Criminal Appeals.

And Appellant did not "inadvertently admit the extraneous offense by thoroughly cross-examining the State's only identifying identification witness during cross-examination. *Siqueiros v. State*, 685 S.W.2d at 71; *Simmons v. State*, 457 S.W.2d at 571; *Ferrell v. State*, 429 S.W.2d at 903. Appellant cross-examined numerous State witnesses, and he did not

necessary impeach any of them - Appellant simply showed that the State did not present legally sufficient evidence tying him to the presently-charged offense.

## The Prior Conviction Was Too Remote to be Admissible Under Texas Rule of Evidence 404(b)

A reviewing court must consider the remoteness of the prior extraneous act because remoteness reduces its probative value. *Clark v. State*, 693 S.W.2d 35, 36- 37 (Tex. App. Houston [1st Dist.] 1985, *pet. ref.*); *Plante v. State*, 692 S.W.2d 487, 491 (Tex. Crim. App. 1985). There is no "per se" rule regarding when an extraneous offense becomes too remote for admission. *Templin v. State*, 711 S.W.2d at 32-33.  However, as a general rule, the greater the time period between the charged and extraneous offenses, the greater the likelihood of error in admitting the evidence of the extraneous offense. *See Reyes v. State*, 69 S.W.3d 725, 740 (Tex. App. Corpus Christi 2002); *Messenger v. State*, 638 S.W.2d at 885 (Court of Criminal Appeals reversed a conviction where nineteen days elapsed between the extraneous offense and the offense charged and tried before the trial court), overruled on other grounds by *Almanza v. State*, 686 S.W.2d 157, 157 (Tex. Crim. App. 1984); *Bachhofer v. State*, 633 S.W.2d 869, 872 (Tex. Crim. App. 1982) (Court reversed the conviction where 52 months

elapsed between the between the extraneous offense and the offense charged and tried before the trial court); *Collazo v. State*, 623 S.W.2d 647, 648 (Tex. Crim. App. 1981) (Court of Criminal Appeals reversed where one year elapsed between the extraneous offense and the offense charged and tried before the trial court); *James v. State*, 554 S.W.2d 680, 683 (Tex. Crim. App. 1977) (Court of Criminal Appeals reversed where 33 months elapsed between the extraneous offense and the offense charged and tried before the trial court); *Ford v. State*, 484 S.W.2d at 731 (Court of Criminal Appeals reversed where two months elapsed between the extraneous offense and the offense charged and tried before the trial court); *Robledo v. State*, 480 S.W.2d 401, 402 (Tex. Crim. App. 1972) (Court of Criminal Appeals reversed where 51 months elapsed between the extraneous offense and the offense charged and tried before the trial court); and *Ybarra v. State*, 401 S.W.2d 608, 609 (Tex. Crim. App. 1966) (Court of Criminal Appeals held that the unlawful sale of alcoholic beverages two years prior to and after current charged offense are inadmissible).

Examples of cases where the offenses were held sufficiently close in time to be probative include *Cantrell v. State*, 731 S.W.2d at 90 (Court of Criminal Appeals allowed evidence of other armed robberies committed 10

months prior to commission of charged offense); *Castillo v. State*, 739 S.W.2d 280, 290 (Tex. Crim. App. 1987) (Court of Criminal Appeals allowed evidence of several robberies with same characteristics that were committed one month apart); *Robinson v. State*, 701 S.W.2d 895, 898 (Tex. Crim. App. 1985) (Court of Criminal Appeals allowed evidence of unlawful appropriation of property that occurred six months prior to charged offense); *Voelkel v. State*, 501 S.W.2d 313, 315 (Tex. Crim. App. 1973) (Court of Criminal Appeals allowed evidence of embezzlement that occurred eight years prior to charged offense); and *Stringer v. State*, 845 S.W.2d 400, 402 (Tex. App. Houston [1st Dist.] 1992, *pet. ref.*) (Reviewing court allowed evidence of admitting evidence of sexual assault that occurred five years prior to charged offense).

The factors used to measure the probative value of extraneous offense evidence are: (1) the similarity between the extraneous offense and the offense charged; (2) the closeness in time of the extraneous offense to the charged offense; and (3) the availability of alternative sources of proof. *See Robinson v. State*, 701 S.W.2d at 898-899; *Corley v. State*, 987 S.W.2d 615, 619 (Tex. App. Austin 1999).

While there are certainly similarities between the 1989 offense and the 2001 offense, as discussed above, there are ample differences. More importantly, there is a 12-year time period between the two offenses. This time period renders the 2001 extraneous offense too remote to be admissible during the guilt / innocence phase of the trial for the 1989 offense.

This Court should also consider whether there were intervening acts of misconduct between the old extraneous offense and the current offense charged. If there were no such intervening acts of misconduct, the old offense should not be admissible. *Lang v. State*, 698 S.W.2d 735 (Tex. App. El Paso 1985, *no pet.*); *Bachhofer v. State*, 633 S.W.2d at 872; *McDonald v. State*, 513 S.W.2d 44, 50-52 (Tex. Crim. App. 1974) (Where there are several intervening acts of similar misconduct between the presently-charged offense and the older extraneous offense, the older extraneous offense was admitted). There is no evidence that Appellant committed any intervening acts of misconduct between the 1989 offense and the 2001 conviction.

### Role of the Trial Court and Texas Rule of Evidence 403

The trial court must determine whether the extraneous offense is relevant to prove a material issue other than the defendant's character. TEX. RULE EVID. 402; *Huddleston v. United States*, 485 U.S. 681, 686 (1988);

*Turner v. State*, 754 S.W.2d 668, 672 (Tex. Crim. App. 1988). The trial court must also determine whether such offense serves to make more probable either an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact. *Montgomery v. State*, 810 S.W.2d at 390-392.

Rule 403 of the Texas Rules of Evidence provides "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. RULE EVID. 403. When a Rule 403 objection is made and then overruled, the trial court necessarily conducts a balancing test by considering and overruling the objection. *Parmer v. State*, 38 S.W.3d 661, 670 (Tex. App. Austin 2000, *pet. ref.*); *Howland v. State*, 966 S.W.2d 98, 103 (Tex. App. Houston [1st Dist.] 1998), *affirmed*, 990 S.W.2d 274 (Tex. Crim. App. 1999); *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App. Waco 1997, *pet. ref.*). It is not necessary for a trial court to put its findings and conclusions about a Rule 403 objection on the record. *Green v. State,* 934 S.W.2d at 104. In *Parmer v. State*, the Fourth Court of Appeals held that when a Rule 403 objection is made and overruled, the trial court performed

a balancing test in that moment. *Parmer v. State*, 38 S.W.3d at 670. A balancing test does not need to be performed on the record to render the balancing test completed. *Id.*; *Green v. State*, 934 S.W.2d 92, 104 (Tex. Crim. App. 1996).

Texas Rule of Evidence 403 recognizes that relevance alone does not ensure admissibility. J. McLaughlin, Weinstein's Federal Evidence §403.02[1][a] at 403-406 (2006 rev.) (Discussion of Rule 403 of the Federal Rules of Evidence). A cost/benefit analysis must often be conducted by the trial court. *Id.* Relevant evidence may be excluded if its probative value is not worth the problems that its admission may cause. *Id.* The issue is whether the "search for truth will be helped or hindered by the interjection of distracting, confusing, or emotionally charged evidence. In making this determination, the [trial] court must assess the probative value of the proffered item as well as the harmful consequences specified in Rule 403 that might flow from its admission." *Id.*

The key phrases in this analysis are "probative value" and "unfair prejudice." Probative value means more than simply relevance. *Old Chief v. United States*, 519 U.S. 172, 184 (1997) (Discussion of Federal Rule of Evidence 403). Probative value is the inherent probative force of an item of

evidence; that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation-coupled with the proponent's need for that item of evidence. *See Montgomery v. State*, 810 S.W.2d at 390 ("[w]hen the proponent [of an item of evidence] has other compelling or undisputed evidence to establish the proposition or fact that the [item of evidence] goes to prove, the [probative value of the item of evidence] will weigh far less than it otherwise might in the probative versus-prejudicial balance.").

The second key phrase of Rule 403, "unfair prejudice," refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence. K. Broun, et al., McCormick on Evidence §185 at 737 (6th ed. 2006).

Rule 403 also discusses other issues relevant to the trial court's analysis. "Confusion of issues" refers to a tendency to confuse or distract the jury from the main issues in the case. S. Goode, et al., Texas Practice: Guide

to the Texas Rules of Evidence, § 403.2 at 165 (3rd ed. 2002). "Misleading the jury" refers to a tendency of certain evidence to be given undue weight by the jury on other than emotional grounds. *Id.* § 403.2 at 164. The Court of Criminal Appeals has provided a Rule 403 analysis based upon the following factors: (1) the probative value of the evidence, (2) the potential of the evidence to impress the jury in some irrational yet indelible way, (3) how much trial time the state needs to develop the evidence such that the jury will be diverted from the charged offense, and (4) how great is the State's need for the extraneous evidence. *State v. Mechler*, 153 S.W.3d at 440; *Montgomery v. State*, 810 S.W.2d at 389-390.

The defendant need not object to the admission of extraneous offense instruction to be entitled to a contemporaneous limiting instruction of the extraneous offense evidence to the purpose that justified its admission. *Hammock v. State*, 46 S.W.3d 889, 894 (Tex. Crim. App. 2001). But if the defendant makes an objection, the defendant should object specifically that the probative value was outweighed by the danger of unfair prejudice to defendant. *Yohey v. State*, 801 S.W.2d 232 (Tex. App. San Antonio 1990, pet. ref.); *Malone v. State*, 849 S.W.2d 414 (Tex. App. Beaumont 1993, *no pet.*). In this case Appellant did specifically object that the probative value of

admission of the 2001 conviction was outweighed by the danger of unfair prejudice to him.

## Rule 403 Factors

When determining if admission would create unfair prejudice, the court must balance: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). As the Court of Criminal Appeals has noted, "these factors may well blend together in practice." *Id.* at 642. "[Rule 403] envisions exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568–69 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)).

"Probative value" means more than simply relevance; it "refers to the inherent probative force of an item of evidence - that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation - coupled with the proponent's need for that item of evidence." *Gigliobianco*, 210 S.W.3d at 641.

In this case, there is simply no reason that the State needed to offer evidence of the 2001 conviction to prove the 1989 case. Evidence of the 2001 case carried absolutely no probative force in the current case. A defendant is entitled to be tried on the accusation in the indictment, and not for a collateral crime or being a criminal generally. *Templin v. State,* 711 S.W.2d, 30, 32 (Tex.Crim.App. 1986); TEX. R. EVID. 404(b).

As for the third factor, it "refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* The only possible result of allowing the jury to hear evidence of the 2001 conviction would be that their decision on the current case would be made on an improper basis.

The fourth factor "refers to a tendency to confuse or distract the jury from the main issues in the case." *Id.* "Evidence that consumes an inordinate

amount of time to present or answer, for example, might tend to confuse or distract the jury from the main issues." *Id.*

Evidence presented by the State was for an offense that occurred twelve years after the case for which Appellant was on trial. Further, the evidence did take an inordinate amount of time at trial to develop and present. The State did not just offer evidence that Appellant had previously been convicted of murder, they, essentially, tried him for the 2001 offense during the trial for the 1989 offense by calling the investigating officer, two separate DNA witnesses, and the medical examiner who performed the autopsy in the 2001 case. In addition, a number of photographs and forensic reports were offered.

The fifth factor "refers to a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds." *Id.* "For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." *Id.* This factor similarly favors admissibility. Hearing that a person has been convicted of a violent murder will always result in a jury placing undue weight on that information. Essentially, Appellant was painted as a "murderer in general," rather than being tried on just the facts of the 1989 offense.

The final factor concerns "the efficiency of the trial proceeding rather than the threat of an inaccurate decision." *Id.* Other than a few similarities that would be present in a number of murder offenses, the State showed no connection between the 2001 conviction and the 1989 case. And as stated above, the State spent a great deal of time introducing evidence of the 2001 case through multiple witnesses and exhibits. For all of these reasons, we conclude the trial court did not abuse its discretion when it overruled appellant's rule 403 objection. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641–42.

## The Trial Court's Error Was Not Harmless

The trial court's error was not harmless because when one eliminates the evidence of the 2001 conviction, there simply is insufficient evidence to prove that Appellant committed the presently-charged offense. *See* TEX. RULE APP. PROC. 44.2(a). The trial court's error clearly contributed to the jury's verdict the error. *Connor v. State*, 773 S.W.2d 13, 15 (Tex. Crim. App. 1989).

In applying the harmless error rule, a reviewing court "should not focus upon the propriety of the outcome of the trial, but instead should be

concerned with the integrity of the process leading to the conviction. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1990). The reviewing court "should examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, its probable collateral implications, and how much weight a juror would probably place upon the error." *Id.* In this case, the integrity of the process that led to Appellant's conviction is suspect. The State heavily emphasized the evidence of the 1989 conviction, so it is likely that the collateral implications severely harmed Appellant. Consequently, it is reasonable to conclude that the jury placed great weight on the error.

## Conclusion

The trial court erred and abused its discretion by allowing the State to present evidence of the 2001 conviction for murder because (1) evidence of the 2001 conviction presented to the jury during the innocence/guilt phase was not admissible based upon motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, and flight; and (2) the probative value of admitting evidence of the 2001 conviction for murder was substantially outweighed by the danger of unfair prejudice, confusion of

the issues, and clearly misled the jury. Appellant thus asks this Court of Appeals to reverse the judgment of conviction and sentence for murder and remand this case back to the trial court for a new trial, and order that the evidence of the 2001 conviction not be allowed during the innocence/guilt portion of the trial.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this Court will reverse the judgment of the trial court and enter a judgment of acquittal, or in the alternative, remand the case to the trial court.

Respectfully Submitted,

_/s/ Stephanie Hudson_
Stephanie Hudson

STEPHANIE DUECKER HUDSON, PLLC
1333 W. McDermott Dr., Suite 150
Allen, TX 75013
469.519.7815
972.530.6218 Fax
stephaniehudsonlaw@gmail.com
State Bar No. 24007130
Attorney for Appellant

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Appellant's Brief has been served on the Collin County Criminal District Attorney's Office, 2100 Bloomdale Road, Suite 20004, McKinney, TX 75071.

/s/ Stephanie Hudson
Stephanie Hudson

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limitations in Texas Rule of Appellate Procedure 9.4(i)(2). In reliance on the word count of the computer program used to prepare this brief, the undersigned attorney certifies that this brief contains 6,393 words, exclusive of the sections of the brief exempted by Rule 9.4(i)(1).

/s/ Stephanie Hudson
Stephanie Hudson
