

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00277-CR

CHANCE WILLIAM MOORE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1464825D

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Chance William Moore of continuous sexual abuse of a young child or children and indecency with a child by contact and assessed his punishment at 40 years' imprisonment for the former and ten years' imprisonment for the latter. After sentencing Moore in accordance with the jury's

---

[1]*See* Tex. R. App. P. 47.4.

verdicts, the trial court ordered his sentences to run consecutively. Moore appealed and asserts five issues.

In his first two issues, Moore contends that the trial court abused its discretion by permitting an alleged victim not identified in the indictment to testify and by allowing a complainant's father to testify as an outcry witness. Next, he asserts that the trial court should have forced the State to elect the acts on which it was relying for conviction. Fourth, maintaining the evidence is insufficient, Moore attacks his conviction for indecency with a child by contact. Finally, because the State did not timely disclose material evidence, Moore maintains that it violated the Michael Morton Act and his due-process rights. We affirm.

**The Evidence**

Moore's mother ran a daycare out of the Moore family home. The two complainants—Ann and Bobby Smith—were half-siblings who had attended the daycare.[2] Their older half-sister, Cathy,[3] had also previously attended the daycare.[4] Over the years, the Smith and the Moore families became close.

---

[2]We use fictitious names to refer to the complainants and their family members to protect their identity. *See* Tex. R. App. P. 9.8 & cmt., 9.10.

[3]The three children had the same father (Frank) but three different mothers.

[4]Cathy was not a complainant in this proceeding. Because Moore was a juvenile himself when Cathy attended the daycare, the State sent those charges to the juvenile court, which later certified Moore to be tried as an adult.

But throughout those same years, Moore—taking advantage of his mother's absence while she ran errands or picked up other children from school, or simply profiting from those moments when no one else was around—inappropriately touched or groped all three children while at the daycare. Twenty years old when testifying at trial, Cathy stated that the abuse started when she was eight and stopped when she was 12 and ended because she left the daycare to live elsewhere with her mother. Fourteen-year-old Ann testified that the abuse started when she was about five years old, ended when she was around 11, and stopped when she too left the daycare to live with her mother. The youngest sibling, Bobby, was only five at the time of trial. Despite the abuse, none of them spoke up, and none was aware of what Moore was doing or had done to the others.

The floodgates opened after one of Ann's softball teammates made an unrelated sexual-abuse outcry. Seeing how her teammates responded, Ann felt comfortable and decided to tell one of them that she too had been abused. Ann's teammate related the abuse to her mother, who then contacted Ann's mother, who forwarded the information to Ann's father, Frank.

When learning of Ann's outcry, Frank, knowing that Bobby still attended the Moore daycare and that his older daughter Cathy had previously attended it, asked them independently—without disclosing what had happened to Ann—if anything had happened to them. Both made outcries.

3

As necessary to Moore's issues, we will further develop the facts.[5]

## Issue One

**The trial court did not abuse its discretion by permitting Cathy to testify about how Moore sexually abused her.**

In Moore's first issue, he asserts that the trial court erred by allowing Cathy, who was not a complainant, "to testify about extraneous crimes/wrongs/acts [that he] allegedly committed against her" because the evidence was not relevant under article 38.37 of the code of criminal procedure.

[5]How Moore managed to sexually abuse the Smith children over such a lengthy period without an outcry deserves some comment. Ann, for her part, denied that Moore frightened or ever threatened her; she described him as annoying and as making her feel uncomfortable. Ann stayed quiet because she was aware that the two families (hers and Moore's) were fairly close and because she feared that telling would cause Child Protective Services to take Moore's younger brother, with whom she was friends, away from the home. In contrast, Cathy was scared—not of Moore, but that telling her parents would hurt them—so she tried "to get past it on [her] own . . . ." As for Bobby, because Moore had persuaded him that he (Bobby) would himself go to jail if he told, Bobby panicked when his father took him to the police station to report the abuse. A fourth victim who testified at the punishment trial stated that Moore molested her at the daycare when she was seven, and that when she voiced her intention to tell, Moore threatened to kill her whole family. Without telling her mother and grandmother why, she refused to return to the daycare, and without getting an explanation, they respected her wishes.

During the punishment phase, Moore's sister described him as "retarded," as having always been bullied and picked on, and as having a speech impediment that made him difficult to understand. Testifying during the guilt phase, Moore asserted that he took "[s]pecial ed, PE, [and] computer classes." He acknowledged graduating from high school, having a driver's license, having held a job, and knowing the difference between right and wrong. Despite any disabilities, Moore safely navigated these dangerous waters for many years. In any event, his disabilities were not a defense to prosecution and, based on the jury's punishment verdicts and the trial court's cumulating his sentences, apparently not much of a mitigating factor.

4

*See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b) (West 2018). To the extent Cathy's testimony was relevant, Moore contends that it still should have been excluded under evidentiary rule 403 because its potential to unfairly prejudice him substantially outweighed its probative value. *See* Tex. R. Evid. 403. We disagree.

### A. Moore's sexually abusing Cathy was relevant.

Generally, the State may not use extraneous offenses against an accused in a criminal trial, but exceptions exist. *See Daggett v. State*, 187 S.W.3d 444, 450–51 (Tex. Crim. App. 2005). For example, when the legislature enacted article 38.37, section 2, it carved out an exception to the general rule prohibiting extraneous-offense evidence and made evidence of propensity and character admissible in specific types of cases. *Harris v. State*, 475 S.W.3d 395, 402 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

Article 38.37, section 2(b), applies to criminal prosecutions for certain offenses under the penal code, one of which is the continuous sexual abuse of a young child or children, and provides that notwithstanding evidentiary rules 404 and 405, the trial court may admit evidence that a defendant had committed a separate identified sexual offense "for any bearing the evidence has on relevant matters, including the [defendant's] character. . .and acts performed in conformity with the [defendant's] character . . . ." Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b).

5

Here, the State accused Moore of sexually abusing children in his mother's daycare. Cathy testified that Moore sexually abused her while she was a child in Moore's mother's daycare; that testimony is thus relevant both as to his character and to "acts performed in conformity with [his] character . . . ." *Id.* "Evidence that appellant has previously sexually assaulted a child is probative that his actions toward the complainants were not innocent actions that were misinterpreted as sexual but were, in fact, done with an intent to arouse or gratify appellant's sexual desire." *Bezerra v. State*, 485 S.W.3d 133, 141 (Tex. App.—Amarillo, pet. ref'd), *cert. denied*, 137 S. Ct. 495 (2016).

Relying on cases where identity was the issue, Moore argues that Cathy's allegations were not sufficiently similar to make them relevant. *See Beets v. State*, 767 S.W.2d 711, 740 (Tex. Crim. App. 1987) (op. on reh'g), *cert. denied*, 492 U.S. 912 (1989); *Moore v. State*, 700 S.W.2d 193, 201 (Tex. Crim. App. 1985), *cert. denied*, 474 U.S. 1113 (1986); *Dickey v. State*, 646 S.W.2d 232, 233–34 (Tex. Crim. App. 1983); *Martin v. State*, 722 S.W.2d 172, 174 (Tex. App.—Beaumont 1986, pet. ref'd). Moore's analysis is flawed.

Traditionally, admitting extraneous acts to show identity requires that the acts be so similar to the charged offense that they effectively identify themselves as the defendant's handiwork—that is, by comparing the charged offense's circumstances to the extraneous one's, the defendant's "signature" reveals that the same person committed both. *Bishop v. State*, 869 S.W.2d 342, 346 (Tex. Crim. App. 1993); *see also Beets*, 767 S.W.2d at 740 (stating that to admit an

6

extraneous matter for identity purposes, the defendant's "'signature' must be apparent from a comparison of circumstances in both cases"); *Moore*, 700 S.W.2d at 201 (stating that "evidence of an extraneous offense becomes admissible evidence to prove identity only if there is some distinguishing characteristic or characteristics common to both the primary offense and the extraneous offense."); *Plante v. State*, 692 S.W.2d 487, 493 (Tex. Crim. App. 1985) (providing that extraneous offenses were so similar as to constitute proof of modus operandi); *Dickey*, 646 S.W.2d at 234 (asserting that once identity is an issue, extraneous-offense evidence is admissible to prove identity only if there are distinguishing characteristics common to both the extraneous offense and the charged one); *Martin*, 722 S.W.2d at 174 (declaring that when identity is an issue, the extraneous offense must be so nearly identical to the charged offense as to earmark it as the accused's handiwork; much more is demanded than merely committing repeatedly similarly-classed crimes; the method used must be so unusual and distinctive as to be like a signature).

When comparing extraneous-acts evidence to prove identity to extraneous-acts evidence to prove something else, such as intent, identity-related evidence requires a much higher degree of similarity to the charged offense. *Bishop*, 869 S.W.2d at 346. Without being highly similar, the extraneous acts' prejudicial effect would substantially outweigh their probative value for identity. *Id.* "Clearly, such a high degree of similarity is not required when the purpose of the proof is to show intent. We have only required such a high degree

7

of similarity in our prior cases when identity was the issue at bar." *Plante*, 692 S.W.2d at 493.

So because Cathy did not testify in order to identify Moore as the perpetrator—neither Ann nor Bobby had any difficulty identifying him—but to show Moore's tendency to prey on children in his mother's daycare and to show that he acted in conformity with that character when he molested Ann and Bobby, we hold that the high-degree-of-similarity standard that Moore argues for does not apply. *See Bishop*, 869 S.W.2d at 346; *Plante*, 692 S.W.2d at 493.

### B. The potential for unfair prejudice did not substantially outweigh the evidence's probative value.

Moore further contends that the trial court abused its discretion by admitting this extraneous-offense evidence over his rule 403 objection. *See* Tex. R. Evid. 403. Rule 403's balancing test may exclude extraneous-acts evidence otherwise admissible under article 38.37, section 2. *See Bezerra*, 485 S.W.3d at 140.

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "Whether evidence is admissible under Rule 403 is within the sound discretion of the trial court." *Burke v. State*, 371 S.W.3d 252, 257 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd, untimely filed). A trial court abuses its discretion if its

8

decision lies outside the zone of reasonable disagreement. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

A rule 403 analysis "favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Booker v. State*, 103 S.W.3d 521, 533 (Tex. App.—Fort Worth 2003, pet. ref'd) (op. on reh'g). When reviewing a rule 403 analysis, we will "reverse the trial court's judgment rarely and only after a clear abuse of discretion because the trial court is in a superior position to gauge the impact of the relevant evidence." *Freeman v. State*, 230 S.W.3d 392, 404–05 (Tex. App.—Eastland 2007, pet. ref'd) (cleaned up); *see also Booker*, 103 S.W.3d at 534.

We are to consider the following non-exclusive factors: "(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005).

Moore relies on *Fox v. State*—an indecency-with-a-child-by-contact case in which the trial court improperly admitted evidence that the defendant cross-dressed—for the proposition that character-conformity evidence is inadmissible under rule 403. 283 S.W.3d 85, 91–94 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). But *Fox* does not help Moore.

For starters, article 38.37 was not discussed, presumably because cross-dressing is not an offense delineated under that article. *See* Tex. Code Crim.

9

Proc. Ann. art. 38.37; *see Fox*, 283 S.W.3d at 93 ("The act of cross-dressing constitutes 'other acts' under rule 404(b).").

Instead, the *Fox* court analyzed the admissibility issue under evidentiary rules 404(b) and 403. *See Fox*, 283 S.W.3d at 91–94 & 94 n.4. Given that (1) the cross-dressing evidence had no relevance apart from the defendant's occasionally dressing in women's clothing and (2) the State had not articulated any countervailing reason under rule 404(b) justifying its admission, the court held that the trial court had abused its discretion. *See id.* at 94.

Additionally, the court held the cross-dressing evidence inadmissible under rule 403 because its probative value on a consequential fact was little, while the danger of unfair prejudice was substantial. *See id.* at 94 n.4.

In contrast, the evidence in Moore's case was relevant to his character (his sexual predilection for young children) and the acts performed were in conformity with that character (taking advantage of his mother's daycare to sexually molest small children). *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b). Character-conformity evidence was specifically prohibited in *Fox* under evidentiary rule 404(b), and apart from character conformity, what little probative value the cross-dressing evidence had in *Fox* was dwarfed by the danger of unfair prejudice. *See* Tex. R. Evid. 403, 404(b). Moore overlooks that article 38.37 specifically overrides rule 404(b) and specifically makes character-conformity evidence relevant under rule 401. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b).

And unlike in *Fox*, the danger of unfair prejudice here did not substantially outweigh the extraneous-offense evidence's probative value. *See* Tex. R. Evid. 403. Moore's fourth issue, which attacks the factual sufficiency supporting the indecency-with-a-child-by-contact conviction, perhaps best shows why: Ann testified that Moore touched her breasts just once but could not give any details, and Moore argues that her inability to recall details insufficiently supports the proposition that he touched her breasts with the intent to arouse or gratify his sexual desire. In contrast to Ann's testimony, Cathy related what appears to have been a running four-year struggle to prevent Moore from touching her breasts over her clothing and under her bra while he laughed and repeated the refrain, "Boobies, boobies."

Moore is right that rule 404(b) generally excludes such propensity evidence. *See* Tex. R. Evid. 404(b). But article 38.37, section 2, removes this bar ("[n]otwithstanding Rules 404 and 405") and allows propensity evidence "for any bearing the evidence has on relevant matters . . . ." Tex. Code Crim. Proc. Ann. art. 38.37, § 2. Character evidence's inherent probative value is thus a proper factor for the trial court to consider when conducting a rule 403 balancing test in a case such as this one. Evidence that Moore had touched Cathy's breasts with the intent to arouse or gratify his sexual desire was probative of the fact that his actions toward Ann were not innocent but were also done with the same intent. *See Bezerra*, 485 S.W.3d at 141 ("Evidence that appellant had previously sexually assaulted his adopted daughter is probative that his actions toward the

11

complainants were committed with intent to arouse or gratify his sexual desire.");

*Price v. State*, No. 07-13-00148-CR, 2014 WL 720893, at *1, (Tex. App.—Amarillo Feb. 18, 2014, pet. ref'd) (mem. op., not designated for publication) ("[The defendant's] previous use of his daughter as a sexual object [was] relevant to his use of her with another person to provide the other man or himself with sexual gratification.").

In short, when considering the four rule 403 factors, we conclude that (1) Cathy's testimony tended to show Moore's prurient interest in female breasts, while Ann's testimony left itself open to the argument that Moore's touching her breast was accidental; (2) when compared to Ann's testimony describing Moore's activities with her, Cathy's testimony would not impress the jury in some irrational yet indelible way;[6] (3) the time needed to develop Cathy's testimony was not inordinate, for she was one of six State witnesses on the first trial day and one of 11 State witnesses overall; and (4) although—given his other sexual conduct with Ann—Moore contests the State's need for Cathy's testimony, we cannot say that the trial court's ruling falls outside the zone of reasonable disagreement where

[6]In addition to Moore's touching her breasts about 15 times and trying to get under her bra around five times, Cathy also testified that Moore twice groped her vaginal area over her clothing and that, on one occasion, he successfully grabbed her hand to touch his genitals over his clothing. In contrast, Ann described Moore's touching her vagina skin-to-skin; his exposing his penis to her, asking her to touch it, and her complying; Moore's pulling down her pants and touching her "butt crack" with his penis; and the one instance when Moore touched her breasts. Cathy actively resisted Moore, but Ann, who was about five or six years old when the abuse started, denied being frightened but admitted being confused because she "didn't know what it meant."

Ann herself provided so few details about the breast-touching incident. *See Prible*, 175 S.W.3d at 733; *Weatherred*, 15 S.W.3d at 542. Accordingly, we hold that the danger of unfair prejudice did not substantially outweigh the probative value of Cathy's testimony.[7] *See* Tex. R. Evid. 403.

We overrule Moore's first issue.

### *Issue Two*

### The trial court did not abuse its discretion by allowing Bobby's father to testify as Bobby's outcry witness.

In Moore's second issue, he argues that the trial court erred "by admitting [Bobby's] 'outcry' statements into evidence through the testimony of [Frank, Bobby's father,] because the statements were hearsay and did not fall within the purview of [a]rticle 38.072." *See* Tex. Code Crim. Proc. Ann. Art. 38.072, § 2 (West Supp. 2017). As we explain, we hold that the trial court did not abuse its discretion.

### A. The evidence shows that the first adult Bobby told was his father.

In July 2016, Ann's mother telephoned Frank while he was driving with Bobby in the backseat. The mother told Frank that Ann had made some

---

[7]Moore's reliance on *Bjorgaard v. State* is misplaced for the same reasons that his reliance on *Fox* is. *See* 220 S.W.3d 555 (Tex. App.—Amarillo 2007), *pet. dism'd, improvidently granted*, 253 S.W.3d 661 (Tex. Crim. App. 2008). In *Bjorgaard*, the State introduced a prior conviction for indecency with a child that the court described as "simply invoking the concept of character conformity . . . ." *Id.* at 560. Because the Amarillo court analyzed only evidentiary rules 401, 403, and 404, *Bjorgaard* has no bearing on and provides no insight into a rule 403 analysis in the context of article 38.37. *Id.* at 559–61.

comments about possible sexual abuse involving Moore but did not go into any detail, saying only that there had been some inappropriate touching.

Distraught and angry, Frank pulled over to the side of the road to settle himself. Ann was 13 years old at the time, and Frank had trusted Moore.

After catching his breath, Frank realized Bobby was still in the Moores' daycare—Bobby had been going to the daycare Monday through Friday since he was three months old—so he asked Bobby, "Did – did Chance [Moore] ever do anything to you? Has he ever touched you?" Bobby answered, "Yes, he touched my pee pee," which is what he called his penis, and added that Moore had also touched "his back," which was "his bottom, his butt." Regarding frequency, Bobby said that Moore's touching his pee pee and back happened a lot. Moore "would [also] kiss his pee pee," but Bobby did not say how often that happened.

After telling his father, Bobby became far less open. For example, all Bobby told his mother was, "Mommy, Chance [Moore] touched my pee pee," and although the forensic interviewer testified, the prosecutor steered her away from what, if anything, Bobby said to her. Bobby made no outcry to the sexual-assault nurse examiner. And at trial, Bobby testified that Moore touched his "middle part," that is, his penis, just one time with his finger but denied any other touching. Because Bobby's later statements were far more circumspect than his initial outcry to his father, Frank's testimony describing Bobby's outcry potentially took on an added importance.

**B. Bobby's father's testimony was hearsay, but article 38.072 provides a hearsay exception.**

Whether Bobby's father's testimony was admissible depends on whether it fell within the purview of criminal procedure code article 38.072, section 2, which creates a hearsay exception for a child's out-of-court "statements" that "describe . . . the alleged offense," so long as the person testifying about those statements was the first adult person to whom the child made an outcry about the offense. *See id.*; *Bays v. State*, 396 S.W.3d 580, 585 (Tex. Crim. App. 2013).

**C. Bobby's father's testimony fell within article 38.072, section 2.**

Moore's attack on Frank's testimony focuses on its perceived lack of reliability "based on the time, content, and circumstances of the statement." Tex. Code Crim. Proc. Ann. art. 38.0072, § 2(b)(2).

**1. Standard of review**

Various courts have created a non-exclusive list of factors to consider when analyzing an outcry statement's reliability. *See Norris v. State*, 788 S.W.2d 65, 71 (Tex. App.—Dallas 1990, pet. ref'd); *Buckley v. State*, 758 S.W.2d 339, 343–44 (Tex. App.—Texarkana 1988), *aff'd*, 786 S.W.2d 357 (Tex. Crim. App. 1990). This non-exclusive list includes:

- whether the child testifies at the trial and admits making the out-of-court statement;

- whether the child is mature enough to understand the need to tell the truth and to have the ability to observe, recollect, and narrate;

15

- whether other evidence corroborates the child's out-of-court statement;

- whether the child made the out-of-court statement spontaneously in the child's own terminology or whether there is evidence showing or suggesting that an adult prompted or manipulated the child beforehand;

- whether the child's out-of-court statement is clear and unambiguous and rises to the needed level of certainty;

- whether the statement is consistent;

- whether the statement describes an event that a child of his or her age could not be expected to fabricate;

- whether the child behaves abnormally after the contact;

- whether the child has a motive to fabricate the out-of-court statement;

- whether the statement is against the child's interest (for example, by reporting the conduct, whether the child expects punishment); and

- whether the defendant had an opportunity under the evidence to commit the alleged act.

*Buckley*, 758 S.W.2d at 343–44.

A trial court enjoys "broad discretion" in determining whether an outcry is admissible under article 38.072, and we will not disturb its determination on appeal unless the record unmistakably establishes an abuse of that discretion. *Garcia v. State,* 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). And a trial court abuses its discretion only when its determination lies outside the zone of reasonable disagreement. *Weatherred*, 15 S.W.3d at 542.

16

### 2. Discussion

Bobby's outcry to Frank showed some signs of reliability. For example, Bobby's statement to his mother and his testimony at trial corroborated his touching outcry, and although Frank asked him if Moore had touched him, it seems unlikely that Bobby, who was only four at the time, would have answered as he did if no inappropriate touching had in fact occurred. Bobby expressed himself in age-appropriate terms and against his own self-interest: Bobby understood, based on Moore's assertions, that *Bobby* would go to jail if he told. And as with Bobby's half-siblings, Moore had the opportunity to touch Bobby inappropriately. Because evidentiary support existed, we hold that the trial court's ruling falls within the zone of reasonable disagreement and was therefore not an abuse of discretion. *See Weatherred*, 15 S.W.3d at 542; *Woodruff v. State*, Nos. 02-11-00337–CR, 02-11-00338-CR, 02-11-00339-CR, 02-11-00340-CR, 02-11-00341-CR, 02-11-00342-CR, 02-11-00343-CR, 2012 WL 3041114, at *9 (Tex. App.—Fort Worth July 26, 2012, pet. ref'd) (mem. op., not designated for publication) ("Although [the complainant] did not testify about the outcries, she did testify that appellant had touched her on her private part, and she therefore confirmed, in part, her statements in the outcries."). Once admitted, the aspects casting doubt on its reliability went to its weight. *See Ellis v. State*, 517 S.W.3d 922, 931 (Tex. App.—Fort Worth 2017, no pet.).

We overrule Moore's second issue.

17

## Issue Three

### The trial court did not err by not ordering the State
### to elect the acts on which it was relying for conviction.

Moore asserts in his third issue that the trial court erred by not ordering the State to elect the acts on which it would rely for conviction when he timely requested such an election. To best understand Moore's complaint, we initially outline the State's indictment.

**A. The indictment**

In count one, the State alleged the offense of continuous sexual abuse of a young child or children with two complainants; none of the component offenses alleged that Moore touched either child's breasts.

Touching the breast, even through clothing, cannot be considered as a component offense of the offense of continuous sexual abuse of a young child or children. *See* Tex. Penal Code Ann. § 21.02(c)(2) (West Supp. 2017). So its absence from count one is not surprising, but touching a child's breast can constitute the separate offense of indecency with a child by contact. *See id.* § 21.11(c)(1) (West Supp. 2017). As shown below, the State drafted the indictment with this understanding in mind.

Counts two, three, and four were component offenses of count one, but the State may not convict a defendant both of continuous sexual assault of a young child or children and of its alleged component offenses. *See id.* § 21.02(e). Because the State could not convict Moore of both count one and its component

18

offenses in counts two, three, and four, it had to make an election at some point, and it did: after Moore rested, the State waived counts two through four.

In count five, the State alleged the offense of indecency with a child by contact by touching Ann's breast. Because this was not a component offense of count one, the State could—and did—proceed on it independently.

**B. The court's jury charge**

We noted that the State waived counts two, three, and four, which were the component offenses of count one. But—at Moore's own request—count one's component offenses reappeared in the court's jury charge as lesser-included offenses of count one.

Introducing those component offenses into the charge as lesser-included offenses added a new complexity level because a defendant may not be convicted of both the greater and lesser-included offenses arising from the same event. *Atkinson v. State*, 404 S.W.3d 567, 570 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Reflecting this fact, the charge instructed the jury to determine if Moore was guilty of continuous sexual abuse of a young child or children (count one) and, if it failed to find Moore guilty of that offense, then—and only then—to determine if Moore was guilty of any of the component offenses. If the jury found Moore guilty of continuous sexual abuse of a young child or children, then the charge instructed the jury to proceed directly to count five—the non-component offense alleging touching the breast. In that way, the charge kept the jury from convicting Moore of both the greater and lesser-included offenses.

19

**C. The State was not required to make an election on count one.**

Relying on caselaw applicable to sexual-assault charges in which the evidence showed the defendant's having committed the alleged offense more than once, Moore argues that the trial court should have similarly required the State here to elect the events on which it sought convictions. *See O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988). We do not dispute the general proposition that when the State alleges one particular act in the indictment and when the evidence shows more than one incident of that same act, then the State must elect the one on which it is relying for conviction. *See Owings v. State*, 541 S.W.3d 144, 150 (Tex. Crim. App. 2017); *see Bates v. State*, 305 S.W.2d 366, 368 (Tex. Crim. App. 1957).

But here the State was not alleging that Moore sexually abused a child just once; rather, it alleged that Moore sexually abused Ann and Bobby repeatedly. Because children normally cannot identify an offense's exact date or, when the abuse is ongoing, differentiate one instance from another, the legislature created the continuous-sexual-abuse offense to deal with perpetrators of sexual assaults against a young child or young children. *Rodriguez v. State*, No. 02-16-00169-CR, 2017 WL 3910979, at *7 (Tex. App.—Fort Worth Sept. 7, 2017, pet. ref'd) (mem. op., not designated for publication). Consistent with this concept, the indictment here alleges that the offense occurred "on or about the 13th day of December 2011, and . . . did through the 15th day of July 2016, during a period of time that is 30 days or more in duration, commit two or more acts of sexual

20

abuse," and then goes on to identify various component offenses. Moore has cited no authority to apply an election requirement to continuous-sexual-abuse charges; conversely, in fact, we recently effectively held to the contrary. *See id.*[8]

**D. The State was not required to make an election on count five.**

In contrast to count one, count five alleges that Moore "on or about the 13th day of December 2013, did intentionally, with the intent to arouse or gratify the sexual desire of any person, engage in sexual contact by touching the breast of [Ann], a child younger than 17 years of age." It alleged one incident.

Generally, where the indictment alleges one act and the evidence shows more than one act, the State must elect the act on which it will rely for conviction. *O'Neal*, 746 S.W.2d at 771. Because Ann testified that Moore touched her breasts just once and because the evidence showed only one breast-touching incident involving Ann, the State had no election to make.

We overrule Moore's third issue.

### *Issue Four*

**The evidence is sufficient to support Moore's conviction
for indecency with a child by contact.**

Moore asserts in his fourth issue that the evidence admitted at trial is insufficient to support his conviction for indecency with a child by contact

---

[8]As noted earlier, submitting component offenses is possible when they are "considered by the trier of fact to be a lesser[-]included offense . . . ." Tex. Penal Code Ann. § 21.02(e)(3). That occurred here. Because the other two exceptions under subsection (e) do not apply, we do not address them. *See id.* § 21.02(e)(1), (2).

because—focusing on Ann's inability to remember the breast-touching incident's details—the State failed to prove that he touched her breasts with the intent to arouse or gratify his sexual desire. We disagree.

### A. Standard of review

In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine if any rational factfinder could have found the offense's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599. The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in the verdict's

favor, and we must defer to that resolution. *Id.* at 448–49; *see Blea*, 483 S.W.3d at 33.

A culpable mental state, generally, is proved by circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978). Intent may be inferred from the accused's acts, words, and conduct. *See Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998) (stating that intent is most often established by circumstantial evidence because an accused's intent is "concealed within his own mind and can only be determined from his words, acts, and conduct" (cleaned up)); *Shamam v. State*, 280 S.W.3d 271, 278 (Tex. App.—Amarillo 2007, no pet.).

## B. Discussion

Moore is right that Ann did not testify to any details about the breast-touching incident from which his intent could be deduced. But the jury was not required to view her testimony in isolation: Ann described many other incidents involving her vagina, Moore's penis, and her buttocks—incidents in which Moore's intent was unmistakably clear. In addition, to the extent one might discount the breast-touching incident as accidental, Cathy's testimony about Moore's relentless attempts to touch her own breasts undermines the idea that Moore's touching Ann's breasts might have been only accidental. When viewing all the evidence in the light most favorable to the verdict, we hold that a rational factfinder could have found beyond a reasonable doubt that Moore touched

23

Ann's breasts with the intent to arouse or gratify his sexual desire. *See Jenkins*, 493 S.W.3d at 599.

We overrule Moore's fourth issue.

### *Issue Five*

**The State did not violate the Michael Morton Act and Moore's due-process rights by not timely disclosing material evidence.**

Moore maintains in his fifth and last issue that the State violated the Michael Morton Act and his due-process rights by not timely disclosing material evidence. *See* Tex. Code Crim. Proc. Ann. art. 39.14 (West 2018); *see also Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963).

### A. Background

During the punishment trial, a fourth victim testified that Moore had sexually abused her too, between 2009 and 2012 while she attended Moore's mother's daycare. Moore objected during her testimony because he discovered that the prosecutor had not made the sexual-assault-nurse examiner's nine-page report available to him. Moore explained that there was "something called TechShare" through which the State electronically shared documents with defense attorneys by clicking on a button, but in this instance, although the prosecutor thought it had been done, it had not. Defense counsel added, "And to be fair, I'm not saying [the prosecutor's] doing this, you know, nefariously or anything. There's a lot of documents in this case. They weren't opened. So we didn't have discovery on this . . . witness." Moore's attorney was then allowed to

24

review the report at trial. After a pause in the proceedings of an undetermined length, Moore expressed his objections, but he did not request additional time to review the document. Moore's attorney then cross-examined the fourth victim; at no point during his cross-examination did he try to impeach her testimony with the disputed document.

### B. Discussion

The record shows that when Moore's attorney discovered the error, the prosecutor provided him a copy of the missing document, the trial court allowed Moore's counsel time to review it, and when trial resumed, counsel did not object to not having had sufficient time and did not move for a continuance; we hold that Moore, by not seeking a continuance, waived any error. *See Branum v. State*, 535 S.W.3d 217, 226–27 (Tex. App.—Fort Worth 2017, no pet.) (holding that defendant's failure to request a continuance was among the factors showing that trial court did not abuse its discretion by denying defendant's objection to the State's not complying with article 39.14); *see also Young v. State*, 183 S.W.3d 699, 705–06 (Tex. App.—Tyler 2005, pet. ref'd) (holding that defendant waived *Brady* violation when he discovered withheld evidence at trial but failed to ask for a continuance).

We overrule Moore's fifth issue.

### Conclusion

Having overruled Moore's five issues, we affirm his convictions.

/s/ Elizabeth Kerr
ELIZABETH KERR
JUSTICE

PANEL:  WALKER and KERR, JJ.; and REBECCA SIMMONS, J. (Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 16, 2018